CROCKER, Assignee, Respondent, vs. HUNTZICKER and others, Appellants.

*November 11, 1901—February 18, 1902.*

*Voluntary assignments: Fraudulent conveyances: Action by assignee to set aside: Statutes: Repeal: Construction: Debtor and creditor: Promissory notes: Payment: Creditor's actions: Practice: Adequate consideration.*

1. In the absence of a statute giving the right, the assignee, in case of a voluntary assignment for the benefit of creditors, takes no right of action as against previous grantees or mortgagees, other than such as the assignor himself would have had.

2. Under sec. 1702a, S. & B. Ann. Stats., in case of a voluntary assignment, the assignee represents the rights and interests of the creditors and has all the rights which such creditors have to bring and maintain an action to avoid fraudulent conveyances and transfers. Said sec. 1702a was dropped out of the Statutes of 1898. Sec. 4974 declares that the repeal of a statute shall not defeat or impair a right of action which had already accrued unless expressly remitted, abrogated or done away with; and sec. 4980 prescribes that subsequent proceedings in actions brought under a repealed statute shall conform to the provisions of the present revision. *Held*, that where an assignee under a voluntary assignment for the benefit of creditors commenced an action to set aside fraudulent conveyances several months before the Statutes of 1898 went into effect, he thereafter has the same right to maintain the action that the creditors would have had.

3. The mere renewal of a promissory note is not a payment of the debt, and does not, as between the original parties, affect the essential nature of the transaction thereby represented.

4. Notwithstanding the liability of an indorser or guarantor is contingent, the holder of a promissory note is a creditor of such indorser or guarantor thereon, within the provisions of sec. 2320, Stats. 1898, avoiding all gifts, etc., made to defraud creditors.

5. Sec. 3029, Stats. 1898, authorizes a judgment creditor, on the return of an execution unsatisfied in whole or in part, to commence an action against his judgment debtor to compel a discovery of any property or thing in action belonging to or held in trust for him. *Held*, that where the return of an execution unsatisfied is unimpeached, the conditions precedent to maintaining such action have been fully complied with, and in contemplation of the statute the creditor has exhausted his legal remedies.

6. Where a farm and personal property worth $12,750 was conveyed in fraud of creditors, $2,000 in money and city lots of little value is not such an adequate consideration as will protect the grantee.

7. Where a debtor, after conveying property in fraud of creditors, applies the consideration received to the payment of his debts, his fraudulent grantee, who had mortgaged the property, and was adjudged liable to the creditors for the money received under the mortgage, is entitled to have deducted therefrom the amount so applied by the debtor.

APPEAL from judgment of the circuit court for Clark county: W. C. SILVERTHORN, Judge. *Modified and affirmed.*

This action was commenced March 21, 1898, by the plaintiff, as assignee of *George Huntzicker,* to set aside certain conveyances and transfers made by the assignor to his children in September, 1893. The defendants severally answered by way of admissions, denials, and counter allegations. At the close of the trial the court found, as matters of fact, in effect: (1) That November 3, 1897, *George Huntzicker* made a voluntary assignment of all his property for the benefit of his creditors to one John Huntzicker, (2) who qualified as such assignee and entered upon the execution of his trust. (6) That at that time he was indebted in a sum in the aggregate far exceeding the amount of his assets. (3) That November 14, 1898, John Huntzicker was duly removed from

his trust as such assignee, and the plaintiff, *E. E. Crocker,* was thereupon appointed in his place as assignee of *George Huntzicker,* (4) and as such commenced this action, and has continued as such assignee. (5) That the property received by the plaintiff as such assignee from the estate of *George Huntzicker* did not exceed $500. (7) That claims to the amount of more than $25,000 have been proved against the estate of *George Huntzicker,* (8) the greater portion of which are based upon liabilities which existed prior to September 9, 1893. (28 and 29) That the greater portion of the debts so proved was for the liabilities arising on account of his having indorsed and guaranteed notes of the Neillsville Manufacturing Company to the Clark County Bank and others prior to September 9, 1893, and which notes had from time to time been renewed, and the several renewals indorsed or guaranteed by *George Huntzicker;* that such liability of *George Huntzicker* was contingent September 9, 1893, and has since become absolute by the proof of such claims and the entry of judgment; that the manufacturing company has been insolvent ever since September, 1893, and there are no assets of that company to satisfy such indebtedness. (10) That September 9, 1893, *George Huntzicker* was a stockholder in the Neillsville Manufacturing Company, and had been one of the promoters thereof; that that company had then been doing business for several years, but had never declared any dividend or made any money; that September 9, 1893, it owed the Clark County Bank upwards of $40,000; that *George Huntzicker* was liable as indorser or guarantor upon all of said indebtedness, and was also indebted to a considerable amount on other obligations; that he then believed the company would never be able to meet its obligations on such indebtedness, but that he would ultimately be called upon to pay the same. (9) That September 9, 1893, *George Huntzicker* was the owner of a farm described, containing 440 acres of land, (11) which on that day he and his wife

conveyed to their daughter, the defendant *Mary E. Brooks,* and which deed was thereupon recorded. (12) That the value of the farm at the time was $12,000. (13) That on the same day he sold and transferred to *Mary E. Brooks* all the farm machinery, horses, cows, farm implements, and a one-half interest in all young stock on the farm. (14) That the value of such personal property was at the time $750. (15) That the consideration for such conveyance and transfers was very inadequate, and much less than the value of the property, and the same was made upon an express agreement between the parties whereby a secret trust was reserved in *George Huntzicker,* by the terms of which the grantor reserved the right to use and occupy the farm, and the right to use the personal property without accounting to *Mary E. Brooks* therefor. (16) That such agreement was actually carried out by the parties, and *George Huntzicker* and wife continued to have and enjoy, use and occupy, the farm from September 9, 1893, until March, 1899, and the personal property from September 9, 1893, to November 1, 1897, two days before making the assignment. (17) That such conveyance and transfers of the farm and personal property were made with the intent and purpose on the part of *George Huntzicker* and wife to hinder, delay, and defraud his creditors of their lawful claims and demands; (18) and that *Mary E. Brooks* received the same with knowledge that the same was conveyed and transferred to her for the purpose of placing such property beyond the reach of the creditors of *George Huntzicker,* and that she participated in such fraudulent intent. (19) That September 12, 1893, *George Huntzicker,* being the owner of certain lots in Neillsville, described, (20) with his wife, conveyed the same to their son, the defendant *Frank Huntzicker,* by deed, which was on that day recorded. (21) That such conveyance was made voluntarily and without consideration, and for the purpose of placing said property beyond the reach of the creditors of *George Huntzicker,*

and for the purpose of hindering, delaying, and defrauding
them. (22) That *Frank Huntzicker* at the time knew of
such intent and purpose, and participated therein, and re-
ceived the property for the purpose of holding the same in
trust for the use and benefit of *George Huntzicker,* and thus
hinder, delay, and defraud his creditors. (30) That October
9, 1896, at the request of *George Huntzicker,* the defendants
*Mary E. Brooks* and her husband executed a mortgage on
120 acres described (being a portion of said farm) to one
Ida Lowe for $1,000, and which mortgage was recorded, and
the $1,000 realized therefrom was paid on one of the debts
of *George Huntzicker.* (23 and 25) That October 26, 1897,
*Mary E. Brooks* and her husband mortgaged the other 320
acres of said farm to Scott, Tiffany & Paul for $5,000, which
amount was received by *Mary E. Brooks,* and by her paid
over to her husband, *Walter C. Brooks,* the defendant here-
in, and by him used and disposed of, and the mortgage was
duly recorded. (24) That said mortgage was so given at
the time when an execution was in the hands of the sheriff
of Clark county, in the case of the First National Bank of
Winona against *George Huntzicker* and others, and with
knowledge on the part of *Walter C.* and *Mary E. Brooks* that
the sheriff had threatened to levy upon the property of
*George Huntzicker,* and was given by them for the purpose
of further hindering, delaying, and defrauding the creditors
of *George Huntzicker* in the collection of their debts. (26)
That November 1, 1897, and two days prior to the making
of such assignment, and in contemplation thereof, *Mary E.
Brooks,* claiming and pretending to be the owner of the per-
sonal property so transferred to her by her father September
9, 1893, and the increase thereof, with the aid of her father
and mother and husband, and for the purpose on the part
of all of said persons of placing said personal property be-
yond the reach of *George Huntzicker's* creditors, and pre-
venting his assignee thereafter to be appointed from getting

possession thereof, made sale of what remained of such stock
to the defendant *John Shanks,* who at the time knew that
*George Huntzicker* was insolvent, and that *John Shanks* re-
ceived the property with actual knowledge of the intent with
which the same was sold to him, and conspired with such
defendants in the fraudulent purpose to save the proceeds
of the property for the benefit of *George Huntzicker,* and
to hinder, delay, and defraud his creditors, and that the pro-
ceeds of such sale ($460) came into the hands of *George* and
*Margaret Huntzicker* and *Mary E.* and *Walter C. Brooks,*
and the property so fraudulently conveyed into the possession
of *John Shanks,* and the same was disposed of by him so that
the plaintiff, as such assignee, cannot get possession thereof.
That November 3, 1897, when *George Huntzicker* made the
voluntary assignment as stated, he was unable to pay his
debts, and was insolvent, and his indebtedness was largely in
excess of all the property he then owned, and also including
the value of the property he had so fraudulently conveyed
to the other defendants, as found. (31) That notice of the
pendency of the action was filed in the register's office May
10, 1898; that all the material allegations of the complaint
were proven and true; that, among other things, the amended
complaint alleged, in effect, that prior to the commencement
of this action certain creditors of *George Huntzicker,* whose
indebtedness existed prior to September 9, 1893, reduced
their claims to judgments, which were duly rendered and
docketed in the office of the clerk of the circuit court for
Clark county, where the said *George Huntzicker* then and
ever since resided, and that executions of such judgments
were and had been duly issued to the sheriff of Clark county
out of the circuit court of that county, and were duly re-
turned by the sheriff *nulla bona* before the commencement
of this action.

As conclusions of law the court found, in effect, that Sep-
tember 9, 1893, *George Huntzicker* was a debtor, within the

meaning of section 2320 of the Statutes; that the conveyances and transfers from him and his wife to *Mary E. Brooks* and to *Frank Huntzicker* were, respectively, fraudulent and void as to his creditors and as to the assignee, and that the plaintiff, as such assignee, was entitled to judgment canceling and setting aside such conveyances, and transferring the title to the real estate to the plaintiff; that the transfer of the stock to *John Shanks* was fraudulent and void as to such creditors and as to the plaintiff, and that the plaintiff was entitled to judgment against all said five participants for $460, the value thereof, with interest thereon from the date of the commencement of this action; that the plaintiff, as such assignee, was entitled to judgment against *Walter C.* and *Mary E. Brooks* for $5,000, with interest from the commencement of this action, on account of the moneys received by them from the mortgage to Scott, Tiffany & Paul; that that mortgage to them and the mortgage of $1,000 to Ida Lowe are valid liens upon the real estate, as to the respective grantees therein named, and that the judgment should transfer such real estate to the plaintiff as such assignee, subject to such liens; and that the plaintiff was entitled to judgment for costs and disbursements to be taxed, and ordered judgment accordingly. From the judgment so entered, the defendants bring this appeal.

For the appellants there was a brief by *Reed & Reed, Charles F. Grow* and *J. R. Sturdevant,* attorneys, and *Sanborn, Luse & Powell,* of counsel, and a supplemental brief by *Reed & Reed* and *Charles F. Grow,* attorneys, and *Sanborn, Luse & Powell,* of counsel, and oral argument by *A. L. Sanborn.*

*L. M. Sturdevant* and *R. J. MacBride,* for the respondent. The following opinion was filed December 17, 1901:

CASSODAY, C. J.   Several objections are made to the judgment.   Some of them are questions of fact disposed of by

the findings supported by evidence. Others are questions of law, or mixed questions of law and fact, requiring consideration.

1. Counsel for the defendants properly contend that, in the absence of a statute giving the right, the assignee, in case of a voluntary assignment for the benefit of creditors, takes no right of action as against previous grantees or mortgagees, other than the assignor himself would have had. *Hawks v. Pritzlaff,* 51 Wis. 160; *Charles Baumbach Co. v. Miller,* 67 Wis. 453. But the statute in force at the time this action was commenced declared that:

"In all cases of voluntary assignment for the benefit of creditors made under the provisions of chapter 80 of the revised statutes, the assignee or assignees shall be considered as representing the rights and interests of the creditors of the debtor or debtors making the assignment, as against all transfers and conveyances of property which would be held to be fraudulent or void as to creditors; and shall have all the rights which such creditors would have to bring and maintain an action to avoid such fraudulent conveyances and transfers." Sec. 1702a, S. & B. Ann. Stats. (ch. 170, Laws of 1882).

This is conceded, but counsel contends that the section was dropped out of the Statutes of 1898. Those statutes did not go into effect until several months after this action was commenced; and they expressly declare, in effect, that the repeal of a statute should not defeat or impair a right of action which had accrued under such statute before the repeal thereof, but that all such rights of action created by or founded on such statute should "be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute." Sec. 4974, Stats. 1898. The same statutes expressly declare that:

"The repeal of said acts shall not affect any act done or right accrued or established, or any proceeding, suit or prose-

cution had or commenced in any civil case previous to the time when such repeal shall take effect; but every such act, right or proceeding shall remain as valid and effectual as if the provision so repealed had remained in force; but the subsequent proceedings in actions or proceedings shall conform to the provisions of these revised statutes when applicable." Sec. 4980.

The last clause of this section, which required "subsequent proceedings in actions" to conform to the provisions of the new statutes, when applicable, cannot be construed as taking away the right of action expressly given to such assignee by ch. 170, Laws of 1882 (sec. 1702a, S. & B. Ann. Stats.). We must hold that the plaintiff, as assignee for the benefit of creditors, had the same right to maintain this action that the creditors would have had.

2. It is contended that none of the indebtedness proved up against the estate of *George Huntzicker* existed at the time of the first alleged fraudulent conveyance. It is conceded that in 1891 or 1892 the Neillsville Manufacturing Company was indebted to the Clark County Bank in a large amount; that at that time Fred Klopf, John G. Klopf, B. Dangers, C. C. Sniteman, *George Huntzicker,* Matthias Kopellan, and J. H. Reddon were directors of the manufacturing company, and as such entered into an agreement among themselves to the effect that they should all share alike in the losses of the company, if any occurred; that they should all indorse the notes of the company as they became due, and that, if any of such notes were renewed, each of them would indorse the same, and they also agreed among themselves that they would pay in $1,000 a month toward retiring or paying the notes signed by the company to the Clark County Bank, and by it rediscounted; and that such agreement was made in 1891 or 1892. The court found that the greater portion of the $25,000 proved up against the estate of *George Huntzicker* was based upon liabilities which

existed prior to September 9, 1893. That several of the notes so existing in 1891 and 1892 were from time to time renewed, there can be no serious doubt. Thus the note of $5,400, dated March 16, 1895, proved up against the estate by John G. Klopf, was the renewal of a loan made by John G. Klopf to the company, and indorsed by the directors, including *George Huntzicker,* some three or four years prior to the date of the note, with one year's interest at eight per cent. added. So it appears that the judgment rendered August 16, 1897, in favor of the First National Bank of Winona, for $7,941.11, was based upon notes which were renewals of prior notes given in 1892 by the manufacturing company to the Clark County Bank, and by it indorsed to the First National Bank of Winona. Such renewals were in no sense a payment of the debt.

"It has been uniformly held in this state that the taking of a promissory note of a debtor does not extinguish the original debt, nor operate as a payment, unless so agreed between the parties." *Matteson v. Ellsworth,* 33 Wis. 488; *Aultman & Co. v. Jett,* 42 Wis. 488; *Willow River L. Co. v. Luger F. Co.* 102 Wis. 636.

"The mere renewal of a note does not, as between the original parties, affect the essential nature of the transaction represented by it." *King v. Doane,* 139 U. S. 166, 172.

3. True, September 9, 1893, *George Huntzicker* was only liable on such outstanding obligations as indorser or guarantor. But there can be no doubt but that the several holders of such notes and obligations were creditors, within the meaning of the statute which declares, in effect, that every conveyance or assignment of any estate or interest in lands or goods or things in action, or of any rents or profits issuing therefrom, and every charge upon property, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful actions, debts, or demands, shall be void as against the persons so hindered, delayed, or defrauded. Sec.

2320, Stats. 1898. Thus it was said by the supreme court of the United States that:

"It is objected that the debt here, at the time of the conveyances, was not absolute, as it should be in order to predicate fraud concerning it. But a contingent debt, likely to become absolute, and which afterwards does become absolute, is, both on principle and precedent, enough to furnish a motive to make a fraudulent conveyance to hinder or avoid its eventual payment. And this may be presumed to have been done here, provided circumstances exist indicative of fraud." *McLaughlin v. Bank,* 7 How. 229.

So in New York it was held at an early day that:

"A party bound by a contract, in virtue whereof he may become liable to the payment of money, although his liability be contingent, is a debtor, within the meaning of the statute avoiding all gifts, etc., made to delay, hinder, or defraud creditors." *Van Wyck v. Seward,* 18 Wend. 375.

To the same effect, *Citizens' Nat. Bank v. Fonda,* 41 N. Y. Supp. 112; *Moosbrugger v. Walsh,* 89 Hun 564; *Pennington v. Seal,* 49 Miss. 518; *Post v. Stiger,* 29 N. J. Eq. 554. This court has gone so far as to hold that a conveyance made with intent to defraud subsequent creditors comes within the section of the statute last cited. *Zimmerman v. Bannon,* 101 Wis. 412.

4. It is contended on the part of the defendants that in the case at bar there was a failure to exhaust the legal remedies against the Neillsville Manufacturing Company and the co-sureties, and hence that this action cannot be maintained. *Gilbert v. Stockman,* 81 Wis. 602; *Krouskop v. Krouskop,* 95 Wis. 296; *French L. Co. v. Thierault,* 107 Wis. 627. The claim is that the evidence fails to show that collection could not have been made from the company. It is undisputed that between December, 1890, and March 1898, thirty-three several judgments were rendered against the company. It is stated that the company gave the Clark County Bank a mortgage on its plant for $35,000 December 7, 1896, to

secure the payment of notes then held by the bank; and that December 11, 1896, Fred Klopf gave the bank a mortgage for the same amount and to secure the same notes. But it appears that there was a prior mortgage on the company's plant, known as the "Jessup Mortgage," which was foreclosed and judgment taken therein, and that the factory was finally sold for less than the prior liens and the mortgage thereon, and the mortgage to the bank was thereupon released. As to the mortgage given by Fred Klopf, the same was subject to a prior mortgage known as the "Huntzicker Mortgage," which was foreclosed, and the land covered by that mortgage was sold thereon at sheriff's sale for $5,541. The only answer to this last statement is that the evidence fails to show that such sheriff's sale was confirmed by the court, and that until confirmed it was subject to redemption by the holder of the second mortgage, and that the mortgage held by the bank covered some land that the Huntzicker mortgage did not cover. The facts mentioned indicate the financial condition of the company for some time prior to the commencement of this action. But the view we have taken of the case renders it unnecessary to discuss the mass of evidence in the record on the subject. It is undisputed that the judgment in favor of the First National Bank of Winona against the Neillsville Manufacturing Company, *George Huntzicker,* and the other co-sureties, for $7,941.11, was rendered in the circuit court for Clark county and docketed therein August 16, 1897. It appears that two payments were made upon that judgment,—one payment of $1,134.44 by the defendant therein, C. C. Sniteman, and the other payment of $1,134.44 by the defendant therein, B. Dangers,—leaving due and unpaid upon that judgment $5,672.23. It is also undisputed that an execution was issued on that judgment to the sheriff of that county September 17, 1897, and that the same was returned wholly unsatisfied November 14, 1897. The statute requiring the issuance and return of an execution unsatisfied

in whole or in part as a condition precedent to maintaining a creditors' bill has been fully complied with.    Sec. 3029, Stats. 1898.    That being so, the same statute expressly authorized the judgment creditor to "commence an action against such judgment debtor and any other person to compel the discovery of any property or thing in action belonging to such judgment debtor and of any property, money or thing in action due or held in trust for him, and to prevent the transfer of any such property, money or other thing in action, or the payment or delivery thereof to such judgment debtor."    In contemplation of the statute, the judgment creditor did exhaust its legal remedies against each and all of the defendants therein, including not only *George Huntzicker,* but the Neillsville Manufacturing Company and the other co-sureties.    There is no attempt to impeach the sheriff's return on the execution, and it must be regarded as a verity. The mere fact that the Clark County Bank finally paid the amount of the balance of the judgment to the First National Bank of Winona, to which it was holden therefor, in no way relieved any of the defendants in the judgment from paying the same.    As indicated, the plaintiff, as such assignee, represents the creditors, and has the same right to maintain this action that they have or would have had.

5. The findings of the court to the effect that such conveyances and transfers were made with the intent to hinder, delay, and defraud such creditors, and that the several grantees mentioned participated in such fraudulent intent, is fully sustained by the evidence.

6. So the court was justified in finding that the conveyance of the farm, and the transfer of the personal property thereon, was made in trust for the use of *George Huntzicker,* to the extent found by the court, and hence contrary to the statute and void.    Sec. 2306, Stats. 1898; *Grant v. Lewis,* 14 Wis. 487; *Faber v. Matz,* 86 Wis. 370; *Stapleton v. Brannan,* 102 Wis. 26; *Young v. Heermans,* 66 N. Y. 374.

7. The contention that the vendee, *Mary E. Brooks,* paid an adequate consideration for the farm and personal property so transferred to her, is without foundation. The value was found to be $12,750. There is evidence that she only gave her father therefor $2,000, and the Superior lots, said to be of little value. It appears from the evidence that *George Huntzicker* paid $1,500 of the amount so received by him to certain of his creditors at or about the time of the conveyance. He had the legal right at that time, though insolvent, to pay some creditors in preference to others. To the extent that he intended to use and did use the money so received by him to pay creditors, there was no intent to defraud creditors. To do equity between the parties, therefore, we have concluded that the $1,500 should be deducted from the $5,000 which *Mary E.* and *Walter C. Brooks* received on account of the mortgage given by them to Scott, Tiffany & Paul, and which they were adjudged to pay, leaving the true amount to be adjudged against them by reason of that mortgage $3,500, and interest as found. On the same theory, the assignee must convey by quitclaim deed to *Mary E. Brooks* the lots described in the inventory, as being in East Superior and Nemadji Park addition to Superior.

*By the Court.*—The judgment of the circuit court is modified to the extent of allowing to *Mary E.* and *Walter C. Brooks* the $1,500 as mentioned, and to have conveyed or transferred to her the Superior lots, as stated, and the judgment so modified is affirmed. Costs are to be taxed in favor of the appellants, but only 200 pages of printing the case and briefs are to be allowed.

A motion by the appellant for a rehearing was denied February 18, 1902.