SIMON v. REYNOLDS-DAVIS GROCERY CO.

Opinion delivered May 5, 1913.

1. FRAUDULENT CONVEYANCES—CONVEYANCE FROM PARENT TO CHILD.—Where an insolvent debtor sold all of his land except his homestead to his children for from $300 to $650 less than its value, while actions were pending against him, on which judgments

were later rendered, it is proper to find that such conveyances were made with an intent to defraud creditors. (Page 169.)

2. FRAUDULENT CONVEYANCES—PRESUMPTION.—A conveyance to near relatives and members of the household of an embarrassed debtor is looked upon with suspicion and scrutinized with care; and when voluntary is *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, it is presumed conclusively to be fraudulent as to existing creditors. (Page 169.)

3. FRAUDULENT CONVEYANCES—BURDEN OF PROOF.—The burden of proof is upon the party suing to set aside a fraudulent conveyance, but the burden is discharged when he shows that an embar-rassed debtor, pending a suit against him by his creditors, made a conveyance of all his land except his homestead, to his sons, for a consideration which appears grossly inadequate upon its face; and the burden is then upon the one holding under the deed to show a consideration. (Page 169.)

Appeal from Crawford Chancery Court; *J. V. Bour-land*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

The appellant, Phil Simon, and one Charles J. Smets, during the year 1910 and prior thereto, had been doing business in Crawford County, under the firm name of Simon Grocery Company, and had become indebted to appellees, on their various separate claims, in the aggregate sum of eleven hundred dollars ($1,100). The appellees had recovered judgments on their separate claims, making up the above aggregate. These judgments had not been paid.

While suits were pending against Simon and Smets, and before judgment was rendered against them, the appellant, Phil Simon, on the 24th day of August, 1910, conveyed to his sons, William Simon and Patrick Simon, coappellants herein, certain tracts of land consisting of the northeast quarter of the southwest quarter of section 11, township 9 north, range 32 west, and known and described in the testimony, as the "Lees Creek Tract," and the fractional southwest quarter of the northwest quarter of section 5, township 9 north, range 31 west, described as the "Watkins Tract," and the. southeast quarter of the southwest quarter of section

35, township 10 north, range 31 west, described as the "Rowe Tract," and in addition to the latter forty-six (46) acres in the southwest corner of the southwest quarter of the southeast quarter of section 31, township 10 north, range 31 west.

Two of the tracts at the time, were mortgaged to the Citizens National Bank, to secure a note for fifteen hundred dollars ($1,500).

The appellees in their complaint, set up the above facts and alleged that the lands were conveyed by Phil Simon to his sons, for a pretended consideration of one hundred dollars ($100), and that the lands were worth the sum of two thousand dollars ($2,000), and that said conveyance was made with the intent to defraud the creditors of Phil Simon.

The prayer was that the conveyance be set aside and that the land be subjected to the payment of the debts of the appellant, Phil Simon, to the appellees.

The answer of the appellants denied that the conveyance was fraudulent and alleged that it was for an express consideration of one hundred dollars ($100) and the assumption on the part of the grantees, of the payment to the Citizens Bank of the mortgage for $1,500, with interest from the 18th day of August, 1909, and that the sum of one hundred dollars ($100) and the amount of this mortgage, with the interest, was an adequate consideration for the conveyance.

The chancellor found that the deed of Phil Simon and wife, to William and Patrick Simon, was made with the intent to defraud the creditors of Phil Simon and entered a decree cancelling the same and ordering the same sold to satisfy the judgments of the appellees herein.

The appellants have duly prosecuted this appeal.

*Sam R. Chew,* for appellants.

1. There is no proof of fraud. Fraud must be proved. Mere inadequacy of price is not sufficient. 9 Ark. 91; 11 *Id.* 378; 38 *Id.* 419; 17 *Id.* 151; 66 *Id.* 16; 63 *Id.* 412.

2. If there was fraud there was no proof that appellants knew of it, or participated in it. 30 Ark. 417; 31 *Id.* 554; 41 *Id.* 316; 23 *Id.* 258. They bought in good faith without notice of the insolvency of Phil Simon.

*L. H. Southmayd* and *Read & McDonough,* for appellees.

1. When an embarrassed debtor conveys his property to his son, the circumstance is such as to raise a suspicion of fraud and casts the burden on him of showing a consideration. 68 Ark. 162. Such conveyances are *prima facie* fraudulent. 73 Ark. 174; 86 *Id.* 225; 91 *Id.* 394, 399; 38 Ill. App. 180.

2. A conveyance of all his property is a strong presumption of fraudulent intent. Wait on Fraud. Conv., § 231. Such a conveyance is void as to creditors. 20 Cyc. 407-8. Relationship in connection with inadequacy of consideration places the burden on defendant to show good faith. 20 Cyc. 754, 1.

3. The chancellor found the transaction fraudulent. The findings are not clearly against the evidence. 101 Ark. 522; 73 *Id.* 489; 97 *Id.* 568.

WOOD, J., (after stating the facts). The testimony on behalf of the appellees, tended to show that the land in controversy, was worth from twenty-one hundred and fifty dollars ($2,150) to twenty-five hundred dollars ($2,500). The court might have found from the testimony of the witnesses for the appellees, that the land was worth as much as twenty-five hundred dollars ($2,500), at the time the deed in controversy was executed. From the testimony of about the same number of disinterested witnesses on behalf of the appellants, the court might have found that the land in controversy, was worth a great deal less than the value placed upon it by the witnesses for the appellees.

The question of the value of the land at the time of the execution of the deed in controversy, was one of fact, and the finding of the chancellor in this respect, in our opinion, is not clearly against the preponderance of the evidence.

Assuming that the land was worth as much as twenty-five hundred dollars ($2,500), and the grantees would have paid for it as much as eighteen hundred and fifty dollars ($1,850), the highest price shown by testimony of any of the witnesses on behalf of appellants, then there would have been a difference of six hundred and fifty dollars ($650) that the creditors of Phil Simon would have been entitled to, out of his landed estate.

. If the value of the land was but twenty-one hundred and fifty dollars ($2,150), there would have been a difference of but three hundred dollars ($300) between the price paid and the actual value of the land, to which the creditors would have been entitled.

The mere difference between the actual value of the land, according to the testimony of the appellees, and the price paid for same, would not alone be sufficient to show that there was any intent to defraud the creditors of Phil Simon in the conveyance made by him to his sons. But when this is considered in connection with the other facts in evidence it can not be said that the chancellor erred in finding that the conveyance was made with the intent to defraud creditors. For the undisputed evidence shows, and it is admitted, that the appellant, Phil Simon, at the time the conveyance was made, owed the appellees the amounts claimed by them respectively, and that suits were pending against him on these claims at the time he made the conveyance, and that judgments were thereafter obtained for the several amounts claimed.

For the appellant, Phil Simon, under these circumstances, to sell all the land he owned, except his homestead, to his sons, for an amount considerably less than the value of the land, was a strong badge of fraud. It matters not that Phil Simon used the whole or a part of the proceeds of the sale, in payment on his debts, for he was unable to pay his debts and was insolvent, and the fact that the conveyance was made to his sons under such circumstances, would warrant the conclusion that

he was making the conveyance in order to put the property in the hands of his children, and to give them the benefit of the difference between the price paid by them and the real value of the land.

This court has often held that "conveyances made to members of the household and near relatives of any embarrassed debtor, are looked upon with suspicion and scrutinized with care, and when they are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors." (*Wilkes* v. *Vaugh,* 73 Ark. 174; *McConnell* v. *Hopkins,* 86 Ark. 225; *Morgan* v. *Kendrick,* 91 Ark. 394-399.)

To the extent that the price paid was less than the value of the land, the conveyance, so far as creditors are concerned, must be held to be voluntary and without consideration.

As was said in *George E. Priest against Abraham W. Conklin* and *Hunter C. Conklin, Administrators,* 38 Ill. App. 180, where an embarrassed debtor conveyed a farm that was under mortgage, to his son: "If the farm was worth no more than the incumbrances, he (the son) could abandon the title and suffer no loss. If it should be of greater value, then such excess would be a gift from his father."

In *Leonard* v. *Flood,* 68 Ark. 162, we said: "Where an embarrassed debtor conveys his property to his son, the circumstance is such as to raise a suspicion of fraud, in a suit by his creditors attacking the conveyance as fraudulent, and to cast upon him the burden of showing a consideration."

While the burden of proof is upon the plaintiff who alleges fraud, to show it, yet that burden has been discharged, where, as in this case, he shows that an embarrassed debtor, pending a suit against him by his creditors, has made conveyance of all the land he owned, except his homestead, to his sons, for a consideration which upon the face of the conveyance appears to be a

grossly inadequate one.  Such circumstances are sufficient to raise a suspicion of fraud and to cast a doubt upon the legality of the transaction, and the burden is then on the one holding under the deed to show a consideration.  (*Leonard* v. *Flood, supra.*)

The testimony of the appellants is not in entire accord as to the amount of the consideration that was paid for the lands.  The testimony further shows, that although the deed was made on the 20th of August, 1910, it was withheld from the record until the 17th day of November, 1910, and then entered upon the records, just before judgments were rendered in favor of the appellees against appellant, Phil Simon.

The testimony also showed, that although the lands had been conveyed from Phil Simon to his sons on August 20, 1910, he continued to pay the taxes on them in 1911.

The testimony of Geo. R. Wood on behalf of the appellees, shows that Phil Simon, when he was attempting to borrow fifteen hundred dollars ($1,500) on the property, afterwards conveyed to his sons, represented to the cashier of the Citizens Bank, from whom he obtained the money, that the property was worth from two thousand to twenty-five hundred dollars.  In his testimony given in this case, to sustain the conveyance, he states that the property was worth about fourteen hundred dollars ($1,400).

Phil Simon testified, that when he made the application to borrow the fifteen hundred dollars ($1,500) from the Citizens Bank, he might have told the cashier that the land was worth two thousand to twenty-five hundred dollars.  He said he did not recollect telling him that, but might have done so, as he was "needing money very bad."

It thus appears that appellant, Phil Simon, is in the unfortunate attitude of being willing to make representations and shape his testimony to suit his own selfish interests, regardless of the real facts.  The testimony of such a witness should not be entitled to much

consideration in a case where his own interest is involved.

We are of the opinion, that when the record is considered as a whole, the findings of the chancellor are sustained by the clear preponderance of the evidence and that his decree is in all things correct, and the same is therefore affirmed.