### FIRST NATIONAL BANK *v.* HERRING.

Opinion delivered June 4, 1923.

FRAUDULENT CONVEYANCES—USE BY HUSBAND OF WIFE'S MONEY.— When a wife allows her husband to use her money as his own for a long period of time, and to purchase property with it in his own name, and to obtain credit upon the faith of his being the owner thereof, she will not be allowed to claim such property against his creditors.

Appeal from Johnson Chancery Court; *W. E. Atkinson,* Chancellor; reversed.

*Patterson & Rogers,* for appellant.

The findings of the chancellor are against the preponderance of the testimony. Conveyances made to members of the household and near relatives of an embarrassed debtor, when voluntary, are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to final wreck they are presumed conclusively to be fraudulent as to existing creditors. 73 Ark. 174; 133 Ark. 260. In such conveyances from husband to wife the burden of showing good faith is upon the wife. 134 Ark. 242; 133 Ark. 224; 71 Ark. 613; 74 Ark. 166; 20 Cyc. 527; 200 Ill. 257; 134 Ill. 350; 159 Ind. 613; 109 Iowa 484; 200 Ill. 267; 65 N. E. 625; 32 West Va. 447; 20 Cyc. 529; 171 Mo. 682.

*J. J. Montgomery* and *Webb Covington,* for appellees.

The chancellor's findings are supported by the preponderance of the testimony. The deed to Lizzie C. Herring was not a voluntary conveyance without consideration. A prior lien creditor has no right to complain of subsequent conveyances made by debtor. 20 Cyc. 422. A voluntary conveyance made with intent to defraud either existing or subsequent creditors is void as to both classes. 110 Ark. 343; 59 Ark. 614. The cases cited for appellant are not applicable to state of facts herein. Lizzie C. Herring was a *bona fide* creditor of her husband, and entitled to protection as such. 76 Ark. 252; 119 Ark. 497. Herring was not insolvent when the conveyance was executed to her. The bank and J. V. Herring both considered the Mayo property ample security for the bank's debt. No testimony offered to show insolvency of V. I. Herring, joint judgment debtor. Sec. 488, C. & M. Digest; 66 Ark. 486; § 4257, C. & M Digest. If it can be held that there was a fraudulent design against the bank, the wife certainly

had no knowledge of nor participation in it.  20 Cyc. 472; 12 R. C. L., § 62; 31 Ark. 163; 60 Ark. 425; 61 Ark. 442.  Mere knowledge by the grantee of the grantor's intent not sufficient to invalidate transaction.  46 Am. Dec. 519; 201 Pa. St. 286; 88 A. S. R. 811.

HUMPHREYS, J. This is a suit in equity to set aside as fraudulent two deeds of date December 28, 1920, and to subject the real estate therein conveyed to the payment of a deficiency judgment in the sum of $4,377.81, obtained by appellant against appellee in a foreclosure proceeding in the chancery court of Johnson County. The foreclosure proceeding was upon a renewal note of $8,367.93 dated June 1, 1921, and secured by a mortgage on the Sam Mayes place.  The renewal note and mortgage represented a balance due upon a $9,500 note and mortgage of date April 3, 1920, and due June 1, 1921. The $9,500 note and mortgage evidenced a loan from appellant to appellee and his son, V. I. Herring, obtained upon the following financial statement of J. V. Herring, filed in writing with the appellant as a basis for credit:

"For the purpose of procuring credit from time to time with you, for my negotiable paper or otherwise, I furnish the following as a true and accurate statement of my financial condition on April 1, 1920, which may hereafter be considered as representing a true statement of my financial condition, unless notice of change.

"ASSETS.

| | |
|---|---:|
| Cash in bank | $    103.00 |
| Bills receivable | 3,220.00 |
| Accounts receivable | 500.00 |
| Real estate in name of firm | 19,000.00 |
| Machinery and fixtures | 1,000.00 |
| Livestock on hand | 750.00 |
| "Total | $24,573.00 |

"LIABILITIES.

Notes payable to bank...........................$ 9,500.00

Total liabilities ..................................$ 9,500.00

Net worth ............................................. 15,073.00

"Total.........................................................$24,573.00

"J. V. HERRING."

Seven thousand dollars of the money was borrowed to pay the purchase price of the Sam Mayes place and the balance to cover advances which had been made to buy mules. The title to the Mayes place was taken in the name of V. I. Herring. The $9,500 note, as well as the renewal note for $8,367.93, was signed by appellee and V. I. Herring. The mortgage given to secure the respective notes on the Mayes place was signed by V. I. Herring and his wife. In addition to this mortgage, appellee transferred notes in the sum of $3,000 to appellant, which he had taken in payment for mules, as collateral security for the payment of the notes. On December 28, 1920, appellee conveyed all of his real estate to his son, V. I. Herring, for an expressed consideration of $8,000, $1,000 cash and the balance on time, with a vendor's lien for same retained in the deed. On the same day V. I. Herring conveyed said real estate to his mother, Elizabeth C. Herring. The deeds were recorded immediately after execution. A short time after the deeds were delivered appellee executed a deed to his wife, Elizabeth C. Herring, releasing the vendor's lien of $7,000 retained in the deed from appellant to his son. No present consideration passed upon the execution and delivery of either deed. According to the testimony of appellee, his purpose was to vest title to said real estate in his wife in satisfaction of various sums she had advanced to him from time to time to use in his business. Concerning the indirect manner of placing the title of the

real estate in Elizabeth C. Herring, appellee said he was advised by Mr. Byington, an abstracter, of the method by which it should be done. In a few days after the execution of the deeds aforesaid appellee transferred his personal property, consisting largely of household goods, to his wife, being under the impression at the time that it was necessary to do so in order to keep other creditors from reaching it. The household goods, however, were exempt under the law. When appellee and his son renewed their note on June 1, 1921, they did not inform appellant that all the real estate included in the statement as a basis for credit had been conveyed to Elizabeth C. Herring. When the renewal note matured, appellee and his son were unable to pay it, and a foreclosure suit was instituted and prosecuted to a conclusion in the chancery court of Johnson County. In that suit the indebtedness was reduced to a judgment, and the proceeds from the foreclosure sale of the Mayes place, together with a small collection on the mule notes, were applied as a payment thereon, leaving a balance of $4,377.81. It is sought by the instant suit to collect this balance out of the real estate conveyed by appellee to his wife, the insolvency of appellee and his son being alleged in the bill and not specifically denied in the answer thereto. The deeds are attacked upon the ground that the transfer of the lands contained therein rendered appellee insolvent, and was without consideration. The chancery court found this issue against appellant, and dismissed its bill for want of equity, from which is this appeal.

Appellant contends that the findings of the trial court are against the weight of the evidence. Appellee conveyed all his property, both real and personal, to his wife, except the Mayes place and the mule notes. According to his testimony, this did not affect his solvency. He testified that about the time he conveyed the lands to his wife he was offered $8,000 for the Mayes place, which he refused, holding same for $10,000. A.

N. Ragon, the president of appellant bank, testified that appellee tried to sell the place, but was unable to do so. Appellee purchased it for $7,000, and at the foreclosure sale it brought only $5,000. The mule notes proved to be worthless. Appellant succeeded in collecting only $81 out of them. A. N. Ragon and the cashier of appellant bank, R. D. Dunlap, testified that the loan was greater than the value of the Mayes place. A careful reading of the testimony bearing upon this point has convinced us that the mule notes and the Mayes place were insufficient in value to pay the indebtedness at the time appellee conveyed his other lands to his wife. We are also of the opinion, after reading the testimony, that the circuitous conveyances of the real estate by appellee to his wife were without consideration. No present consideration passed when the conveyances were made. The claim is that the conveyances were ¬ade in satisfaction of a preexisting indebtedness of about $8,000 from appellee to his wife. Appellee and his wife testified that she had advanced him various sums of money, covering a period of five or six years, to use in his business. It is not claimed that the amounts advanced were charged by appellee's wife to him or that accounts were kept between them. No evidences of indebtedness were issued by appellee and delivered to his wife, and there was no promise on his part to pay her any definite amount at any certain time. Mrs. Herring produced checks for small amounts, totaling $600, covering a long period of time, which she had drawn in favor of her husband, and which were cashed by him. Some of these checks were used by him in his business and others were used for her personal benefit. Appellee made a written statement at the time he procured the loan from appellant, that he did not owe any one except appellant bank. He did not intimate that he owed his wife anything. We think the testimony insufficient to show that appellee and his wife dealt with each other as debtor and creditor. The manner of making such advances as were made in-

dicated very clearly that they were intended as gifts. They were not treated by the parties as loans. This court said, in the case of *Davis* v. *Yonge,* 74 Ark. 166, that "when a wife allows her husband to use her money as his own for a long period of time, to purchase property with it in his own name, and to obtain credit upon the faith of his being the owner thereof, she will not be allowed to claim such property against his creditors." The same doctrine was announced in the later cases of *Harris* v. *Smith,* 133 Ark. 260, and *Bunch* v. *Crowe,* 134 Ark. 242. It was necessary to prove the insolvency of V. I. Herring as a prerequisite to recovery herein, as his insolvency was alleged and not denied.

For the error indicated the decree is reversed and the cause remanded, with instructions to cancel the conveyances and to subject the real estate conveyed in them, as far as may be necessary, to the payment of appellant's deficiency judgment.