HOME LIFE & ACCIDENT COMPANY *v.* SCHICHTL.

Opinion delivered November 8, 1926.

1. APPEAL AND ERROR—PRESUMPTION IN FAVOR OF DECREE.—Where the chancellor made no special finding of facts, it will be presumed on appeal that he found in favor of the appellee upon all disputed questions, wherever essential to the support of the decree.

2. APPEAL AND ERROR—CHANCELLOR'S FINDING—PREPONDERANCE OF EVIDENCE.—The Supreme Court will accept the finding of the chancery court as conclusive unless against the preponderance of the evidence.

3. FRAUDULENT CONVEYANCES—EVIDENCE.—In a suit by a mortgagee, holding a deficiency judgment after foreclosure, to set aside a conveyance by the mortgagor to his wife on the ground of fraud, a finding of the chancellor that the mortgaged land was of greater value than the debt secured was not against the preponderance of the evidence.

4. FRAUDULENT CONVEYANCES—FINDING OF CHANCELLOR—EVIDENCE.— In a suit by a mortgagee holding a deficiency judgment after foreclosure to set aside a conveyance by the mortgagor to his wife for fraud, a finding that the conveyance was made without actual intent to defraud and that the mortgagor was not then insolvent, *held* not against the preponderance of the evidence.

5. FRAUDULENT CONVEYANCES—VOLUNTARY CONVEYANCE.—A conveyance made without consideration is valid against creditors and purchasers if its execution is free from fraud, either actual or presumed.

6. FRAUDULENT CONVEYANCES—VOLUNTARY CONVEYANCES—PRESUMPTION.—As to subsequent creditors, there is no presumption of fraud in a voluntary conveyance by a debtor, but as to existing creditors there is a presumption in such case.

7. FRAUDULENT CONVEYANCES—PRESUMPTION AS TO SECURED CREDITOR. —The presumption as to existing creditors which arises upon proof of a voluntary conveyance by a debtor does not arise in the case of a secured creditor, who will be held to have looked only to his security for collection of his debt.

8.  FRAUDULENT CONVEYANCES—PRESUMPTION OF FRAUD.—There is no conclusive presumption of fraud as to existing creditors where a debtor executed a voluntary conveyance, if he was not at the time insolvent.

9.  FRAUDULENT CONVEYANCES—PRESUMPTION OF FRAUD—REBUTTAL.— In a suit by a mortgagee holding a deficiency judgment after foreclosure to set aside a voluntary conveyance by the mortgagor to his wife, where the court found ,that there was neither insolvency nor intention to defraud, the presumption of fraud, if any, was overcome by the proof.

Appeal from Lee Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*Daggett & Daggett,* for appellant.

*Mann & McCulloch,* for appellee.

McCULLOCH, C. J. In September, 1919, John N. Schichtl, one of the appellees, became the owner in fee simple of a tract of land in Lee County, Arkansas, containing 643 acres, known as the Sullivan place, the consideration for the purchase being the sum of $40,000, of which $10,000 was paid in cash to J. K. Sullivan, the vendor, and annual installment notes were executed for the balance, with a mortgage on the land to secure the same. Sullivan subsequently assigned the notes to appellant. About the same time, Schichtl purchased an adjoining tract of land containing about 1,100 acres, known as the Highland place, the consideration for the purchase being $28,500, which was all paid in cash except $5,000, a note and mortgage on the land securing the same being executed, and this note also was assigned to appellant. Neither of these debts was paid, and on June 22, 1922, appellant, being still the legal holder of said notes, instituted actions in the chancery court to recover judgment against Schichtl and to foreclose the lien on said tracts of land. The amount of the several debts for which the decree was rendered was $31,950, the indebtedness against the Sullivan Place, and $5,000, the indebtedness against the Highland place. This decree was rendered on September 27, 1922, and a sale of said lands was ordered to pay the debt. The sale was made by the court's commissioner on January 23, 1923, and appellant became the

purchaser of the Sullivan place for the consideration of $15,000, and of the Highland place for the sum of $5,000, the amount of the indebtedness against that place.

It appears from the undisputed proof adduced in the present litigation that, during the time that Schichtl owned these lands and a year or two before the foreclosure of the mortgages, he collected from the St. Francis Levee District the sum of $20,000 as damages caused by the taking of a right-of-way along the Mississippi River for reconstructing the levee. Out of this fund thus collected, Schichtl spent $9,000 in the erection of a gin on the Sullivan place, and he also erected three houses on the farm, the cost thereof not being disclosed in the evidence. Schichtl was also the owner of 630 acres of wild and unoccupied lands in Lee County, the value thereof not being shown in the record in the present case, and, during the pendency of the foreclosure proceedings and prior to the rendition of the decree in the case, he conveyed those lands to his wife, Annie G. Schichtl, one of the appellees, for the recited consideration of ten dollars and love and affection and funds which she had previously advanced to him.

Appellant commenced this action in the chancery court of Lee County on August 11, 1923, to set aside the said conveyance of John N. Schichtl to his wife and to subject the lands to the payment of the unpaid balance of appellant's debt represented by the decree against John N. Schichtl. It was alleged in the complaint that the conveyance was executed by Schichtl to his wife without any valuable consideration and with fraudulent intent to cheat, hinder and delay appellant as his creditor. The answer contained denials of all the allegations of fraudulent intent in regard to the conveyance in question. The cause was heard upon oral testimony and upon an agreed statement as to some of the material facts in the case, and the chancery court rendered a decree in favor of appellees, dismissing appellant's complaint for want of equity.

There was a sharp conflict in the testimony upon some of the material facts, principally as to the mar-

ket value of the Sullivan place and the Highland place at the time of the execution of the deed by Schichtl to his wife which is alleged to have been executed with fraudulent intent. The chancellor made no special findings of fact, but we must assume that he found in favor of appellees upon all disputed facts which are essential to the support of the court's decree.

It is undisputed that the consideration for the purchase of these lands in September, 1919, aggregated the sum of $68,500; that the lands were worth that sum at that time, and that Schichtl spent $9,000 in improving the lands by building a gin thereon, making a total valuation of $77,500. There is proof of further improvement of the Sullivan place by building three houses, but we find no statement in the record of the cost of those houses. If the $20,000 received by Schichtl from the St. Francis Levee Board should be deducted from the total valuation stated above in arriving at the true valuation, it would leave an aggregate valuation on the two farms of $57,500. According to the testimony in the case, the appraisers for the levee boards fixed the value of the lands taken at $250 an acre, and no improvements on the farm were taken into the right-of-way. The aforementioned settlement with Schichtl was made upon that appraisement.

The amount of the indebtedness against the two tracts of land at the time of the conveyance now under investigation was about $37,000. The commissioner's sale of the two farms left a deficiency decree of something over $16,000. There was, as before stated, a conflict in the testimony concerning the value of the Sullivan place and the Highland place at the time of the conveyance under consideration, but we must accept the finding of the chancery court as conclusive, unless it is against the preponderance of the evidence. The testimony adduced by the appellees concerning the value of the two farms at the time of the execution of this deed was from $50,000 to $60,000, and the testimony adduced by appellant tended to show that the value of the two tracts at that time was from $35,000 to $40,000. According to the preponderance

of the evidence, the value of the lands at that time was considerably above the amount of Schichtl's indebtedness to appellant. The finding of the chancellor that the value was as much as that shown by the testimony of witnesses adduced by appellees is not against the preponderance of the testimony, and we must therefore accept that finding as correct. In addition to that, it appears from undisputed evidence that, after appellant became the owner of the Highland place, it sold timber therefrom at the price of $2,000. It is undisputed that Schichtl had no other indebtedness of any character except that to appellant, as above stated. Schichtl testified, as his reason for making the conveyance to his wife, that she had been in very bad health for two or three years, and constantly needed money, and that he conveyed the lands to her so that she could be prepared to take care of herself. He testified that he had no idea of defrauding appellant, and supposed that it would realize a sufficient sum from the sale under the mortgages to collect its debt.

It is thus seen that we have a finding of the chancery court in accordance with the preponderance of the evidence to the effect that the deed of conveyance under investigation was executed without any actual intention to defraud creditors, and that the grantor was not insolvent at the time of the execution of the deed. The question then presented is, whether or not there was constructive or legal fraud conclusively presumed from the execution of the deed without consideration other than the grantor's affection for his wife, the grantee. It should be noted, in the beginning of the consideration of this question, that our statute (Crawford & Moses' Digest, § 4874) renders invalid only those conveyances "made or contrived with the intent to hinder, delay or defraud creditors * * * or as against creditors and purchasers prior and subsequent." A conveyance, even without consideration, is valid against creditors and purchasers if its execution is free from fraud, either actual or presumed. Nearly every phase of the subject of fraudulent conveyances has been dealt with in

numerous decisions of this court. The subject was treated at length by Mr. Justice COMPTON in delivering the opinion of the court in *Bertrand* v. *Elder*, 23 Ark. 494. Reference was there made to the opinion of Chancellor Kent in *Reade* v. *Livingston*, 3 Johns. Ch. Rep. 479, where it was directly decided that a voluntary conveyance of property is, as against existing creditors, conclusively presumed to be fraudulent, and that no circumstances will be permitted to repel the presumption. But that decision was directly rejected by this court in the following language: "Though the decision in this case is not unsupported, the decided preponderance of authority, both in this country and in England, is against it, and establishes a rule less rigid, and, in our opinion, more consistent with the sound interpretation of the statute of frauds." After a full discussion of the authorities, the court said:

"The principle, as we apprehend, to be extracted from the decisions in England and America, is that the voluntary conveyance of a party to his wife or child, though he be indebted at the time, is *prima facie* only, and not conclusively, fraudulent, in respect to the claim of an existing creditor, and that the presumption thus raised may be met and repelled by proof on the other side. The question of fraud must depend on all the circumstances of the case, looking to the state and condition of the grantor, the extent of the property conveyed, and the direct tendency of the conveyance respecting the claims of creditors."

Numerous decisions of the Supreme Court of the United States are cited in support of that statement of the law.

In the case of *Driggs & Co.'s Bank* v. *Norwood,* 50 Ark. 42, S. W. 323, 7 Am. St. 78, Mr. Justice SMITH, speaking for the court, used the following language, which is in line with that used in the case cited above: "Every voluntary alienation of his property by an embarrassed debtor is presumptively fraudulent against existing creditors. Indebtedness raises a presumption

of fraud, which becomes conclusive upon insolvency. But, as to subsequent creditors, a voluntary conveyance by a person in debt is not *per se* fraudulent. To make it so, proof of actual or intentional fraud is required." We find in Judge BATTLE's opinion in the case of *Rudy v. Austin,* 56 Ark. 73, 19 S. W. 111, 35 Am. St. 85, the following statement, which is not only a most lucid exposition of the law on the subject, but has been often referred to in subsequent decisions:

"A debtor has the right to make reasonable provisions in property for his wife or children, according to his state and condition in life. But, in doing so, he must retain in his possession property amply sufficient to pay all his debts. If he does so fairly and honestly, the child or wife for whom the provision was made is not bound to refund the advancement for the benefit of creditors, in the event the parent or husband should subsequently fail or become unable to pay the debts he owed when the provision was made. The law requires every man to be just before he is generous. If he makes a voluntary conveyance while he is in debt, it presumes that it is fraudulent as to existing creditors, and the burden is on those claiming under the conveyance to repel the presumption. If he be insolvent, unable to pay his debts, the presumption that it is fraudulent as to antecedent creditors is conclusive."

The line as to the presumption of fraud is thus clearly drawn between attacks by prior existing creditors and subsequent creditors. The statute *supra* protects creditors of both classes, but there is a distinction as to presumption in the rules of evidence in the two classes of cases. As to subsequent creditors there is no presumption, and the burden of proof as to fraud rests upon the attacking creditor, whilst in the case of existing creditors there is a presumption of fraud arising from a voluntary conveyance by the insolvent debtor. *Williams-Echols D. G. Co. v. Bloyd,* 169 Ark. 529, 276 S. W. 1. The proof in this case and the finding of the court thereon is that Schichtl, the grantor, was not insolvent at the time he

made the conveyance to his wife, therefore there is no conclusive presumption of fraud under the rule stated by Judge BATTLE, even though appellant be placed in the same category with reference to presumptions as a prior existing creditor. There are authorities to the effect that a contingent liability, or one dependent upon a future contingency, is not to be treated as an existing debt within the meaning of the rule as to presumptive evidence. *Severs* v. *Dodson,* 53 N. J. Eq. 633, 34 Atl. 7. There are, however, authorities to the contrary. *Thomson* v. *Crain,* 73 Fed. 327; *Sallaske* v. *Fletcher,* 73 Wash. 593, 132 Pac. 648; *Crocker* v. *Huntsinger,* 113 Wis. 181, 88 N. W. 232. Some of those authorities, particularly the Washington case *supra,* do not relate to the statute on fraudulent conveyances, but merely to a statute which provides that a conveyance by one of the spouses to the other of community property "shall not affect any existing equity in favor of creditors of the grantor," and no reference is made to the question of fraud. We are not, however, dealing merely with the question whether the indebtedness is one which literally existed at the time of the conveyance alleged to have been executed with fraudulent intent, but the question is whether or not the indebtedness is held under circumstances which would call into operation a presumption of fraud. We have a case now of mortgage indebtedness, and the real question, so far as the case relates to presumption, is whether or not such conclusive presumption should be indulged in favor of the holder of the secured debt. The reason for indulging presumptions does not apply, we think, under those circumstances, and the authorities support the view that there is no presumption under those circumstances. May on Fraudulent Conveyances, p. 163; Bigelow on Fraudulent Conveyances, p. 188; *Welch* v. *Mann,* 193 Mo. 304, 92 S. W. 98; *Cromby* v. *Young,* 26 Ont. 194. The reason for this distinction in putting secured creditors in the same category as subsequent creditors is that, whatever presumption is to be indulged, the creditor, in selecting his security, has, unlike a general creditor, disregarded

other property of the debtor and looked only to his security for the collection of his debt, hence he is entitled to no presumption of fraud in the conveyance of other property. Such a creditor is one who has already been given a preference over others, and is not in the attitude of an existing general creditor, hence his reliance is deemed to have been founded on his security rather than on the solvency of the debtor. It seems to us that this is a sound distinction, but, at any rate, the trial court has necessarily found in this case that there was no insolvency on the part of the debtor and no intention to defraud; therefore, even if there was a rebuttable presumption, it has been overcome by the proof. This view of the law is not in conflict with our decision in *First National Bank* v. *Herring*, 159 Ark. 317, 252 S. W. 37, which was a case of undisputed insolvency. Nor is it in conflict with the decision of this court in *Wilks* v. *Vaughan*, 73 Ark. 174, 83 S. W. 913, and *James* v. *Mallory*, 76 Ark. 509, 85 S. W. 472. In both of those cases the court dealt with the question of actual insolvency of the debtors, who were indebted to numerous general creditors, and in each instance such conditions were found by the court to exist. The term "embarrassed debtors," used in *Wilks* v. *Vaughan, supra,* was evidently meant in the sense of insolvency in fact, which the court found was the condition of the debtor at the time the conveyance under investigation was executed. In *James* v. *Mallory, supra,* the court treated a mortgage creditor as an existing creditor, but, in doing so, it was in response to the argument that the renewal of a prior debt constituted a subsequent debt. The question now under consideration in regard to the status of a mortgage debt was not presented to us in the argument. In that case, as in *Wilks* v. *Vaughn, supra,* there were numerous general creditors, and the debtor was insolvent at the time the conveyance was executed, and the court found that there was constructive fraud based on actual insolvency. In the present case there was neither insolvency nor actual fraudulent intention.

The finding of the chancery court is, as we have already said, not against the preponderance of the testimony, and therefore should be affirmed. It is so ordered.

HART, J., (dissenting). Judge SMITH and I dissent in this case because we believe that, when the evidence is viewed in the light most favorable to appellee, we have the case of an insolvent debtor, or one whose embarrassment resulted in insolvency, making a voluntary conveyance of a part of his lands to his wife, which prevented appellant from collecting its debt.

Under our former decisions, such disposition is conclusively fraudulent as against existing creditors; and a mortgagee whose debt is due at the time of the voluntary conveyance is an existing creditor. In *Wilks* v. *Vaughan,* 73 Ark. 175, Chief Justice HILL, speaking for the court, said:

"It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and, when they are voluntary, they are *prima facie* fraudulent, and, when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors."

This holding has been quoted with approval in our later decisions. *McConnell* v. *Hopkins,* 86 Ark. 225, 110 S. W. 1039; *Brady* v. *Irby,* 101 Ark. 573, 142 S. W. 1124; *Simon* v. *Reynolds-Davis Gro. Co.,* 108 Ark. 164, 156 S. W. 1015; *Burke* v. *New England National Bank,* 132 Ark. 268, 200 S. W. 1018; *Davis* v. *Cramer,* 133 Ark. 224, 202 S. W. 239; *Farmers' State Bank* v. *Foshee,* 170 Ark. 445, 280 S. W. 380; and *Papan* v. *Nahay,* 106 Ark. 230, 152 S. W. 107.

These cases are cited in 27 C. J. 643 in support of the text, which is as follows:

"In other jurisdictions, if the conveyance is voluntary, it is only *prima facie* fraudulent; but, where the debtor is insolvent at the time of the transfer, or his embarrassment results in insolvency, such conveyances

are conclusively presumed to be fraudulent as against existing creditors, although there is no actual fraudulent intent.''

As above stated, the undisputed facts bring this case within the rule. In June, 1922, appellant brought suit against John H. Schichtl to foreclose a mortgage given to secure an indebtedness which was due and unpaid. On the 20th day of September, 1922, John H. Schichtl made the voluntary conveyance in question to his wife. Appellant, who was the plaintiff in the foreclosure suit, proved its mortgage debt; and, no proof having been adduced therein by appellees, who were the defendants in the suit, judgment was rendered against them for the amount of the mortgage debt, and a foreclosure decree was entered of record on September 27, 1922. The lands were sold under the foreclosure decree on January 23, 1923, and appellant became the purchaser, as stated in the majority opinion. This left a deficiency decree of over $16,000. Schichtl had no property out of which to satisfy the deficiency judgment except the property he conveyed to his wife just seven days before the decree in the foreclosure suit.

Our later decisions support the above interpretation. In *Brady* v. *Irby,* 101 Ark. 573, 142 S. W. 1124, Mr. Justice FRAUENTHAL delivered the opinion of the court, and said: ''But it is also well settled that a voluntary transfer of property by one in debt is presumptively fraudulent as to creditors then existing; and if the debtor is, at the time of such gift, insolvent, or if the gift is of such amount, or made under such circumstances, that it will hinder or delay or defraud existing creditors of such donor, then such voluntary conveyance or transfer becomes conclusively fraudulent and invalid as to such existing creditors.''

At the conclusion of the discussion it was said: ''From this it results that we have here a case where a husband, engaged in business and involved in debt resulting in insolvency, made a voluntary transfer of property to his wife. Under the law, it follows that, as

against existing creditors, such transfer was fraudulent, no matter how pure the motive which induced it, because, from the testimony, the result of such transfer was to reduce the assets of the husband to such an extent as to delay and hinder his creditors in the collection of their debt. *May* v. *State Nat. Bank, supra."*

In *Simon* v. *Reynolds-Davis Grocery Co.,* 108 Ark. 164, the court said: "While the burden of proof is upon the plaintiff who alleges fraud to show it, yet that burden has been discharged where, as in this case, he shows that an embarrassed debtor, pending a suit against him by his creditors, has made conveyance of all the land he owned, except his homestead, to his sons, for a consideration which, upon the face of the conveyance, appears to be a grossly inadequate one. Such circumstances are sufficient to raise a suspicion of fraud and to cast a doubt upon the legality of the transaction, and the burden is then on the one holding under the deed to show a consideration. (*Leonard* v. *Flood, supra*)."

In *Farmers' State Bank* v. *Foshee,* 170 Ark. 451, 280 S. W. 382, the court said: "It impresses us that the purpose of all these conveyances of the property of W. F. Foshee was to place the property beyond the reach of his creditors. The result of all the conveyances was that the property, which was the property of W. F. Foshee when the debts were contracted, became, through the various deeds, the property of Mrs. Foshee, the wife and mother. The law is well established in this State, and by the authorities generally, that 'where an embarrassed debtor makes conveyances to members of his own family—his near relatives—such conveyances are looked upon with suspicion and scrutinized with care; when voluntary, they are *prima facie* fraudulent; and, when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors.' *Wilkes* v. *Vaughan,* 73 Ark. 174-179; *Harris* v. *Smith,* 133 Ark. 250-260; *Davis* v. *Cramer,* 133 Ark. 224."

If, as stated in the majority opinion, the language referred to in *Wilks* v. *Vaughn, supra,* refers to insolvency at the time the voluntary conveyance is made, the result would be the same. The words "when the embarrassment of the debtor proceeds to financial wreck" would certainly be a definition of insolvency, or they would mean nothing and had better never have been used.

As we have already seen, the conveyance was made just seven days before the foreclosure decree, and no attempt was made to disprove the amount of the mortgage. This shows that Schichtl knew that he owed the amount of the debt secured by the mortgage, and that a decree of foreclosure would be entered when the case was reached on the call of the calendar. There is no claim that there was any fraud in the foreclosure sale. It was made in due course, and the voluntary conveyance to his wife left Schichtl without any property to satisfy the deficiency decree. Thus it will be seen that the embarrassment of Schichtl proceeded to financial wreck within four months after the voluntary conveyance was made, and no new cause contributed to this result. These facts are undisputed; and it does not make any difference what caused the depreciation in the value of lands between the date of the execution of the mortgage and the date of the foreclosure sale, for it was a depreciation common to all lands, and existed at the time the voluntary conveyance was made. No matter how pure his motives were, Schichtl made the voluntary conveyance to his wife at a time when he was being sued for a debt past due, which he was unable to pay, and the embarrassment resulted in his financial wreck within four months.

That appellant was an existing creditor is settled by *James* v. *Mallory,* 76 Ark. 509, 89 S. W. 472. In that case the court said: "If he (James) was insolvent at the time, and voluntarily conveyed away his property without consideration, the conveyance is void as against creditors, even though he used no actual intent to defraud."

The court then said that the conveyance of James to Mallory & Company, although absolute in form, was not, under the facts, in extinguishment of the debt, but as security therefor. Hence it was said that Mallory & Company must be treated as creditors whose debts existed at the time of the fraudulent conveyance.

In 27 C. J., 472, it is said that existing creditors are, as the words imply, persons having subsisting obligations against the debtor at the time the fraudulent alienation was made.

In accordance with this rule is the case of *Papan* v. *Nahay*, 106 Ark. 230, 152 S. W. 107. There a voluntary conveyance was made by a person against whom a suit for unliquidated damages was pending. No defense was made to the action, and it resulted in a judgment against the defendant. The plaintiff was held to be an existing creditor.

Indeed, in the absence of authorities, it would seem to be rather a strange and novel doctrine to hold that the holder of a note and mortgage, which are past due, and whose satisfaction is being sought by a pending suit, is not an existing creditor.