## McCONNELL v. HOPKINS.

### Opinion delivered May 11, 1908.

1. FRAUDULENT CONVEYANCES—BURDEN OF PROOF.—Where a husband voluntarily conveys land to his wife under circumstances which cast grave suspicion upon the good faith of the transaction, the burden is upon her to show that the conveyance was not executed for a fraudulent purpose. (Page 230.)

2. VOLUNTARY CONVEYANCES—PRESUMPTION.—Conveyances made to members of the household and to near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and when the embarrassment of the debtor proceeds to financial wreck, they are conclusively presumed to be fraudulent as to existing creditors. (Page 230.)

3. FRAUDULENT CONVEYANCE—CONCEALMENT OF DEED.—Where a husband's deeds to his wife were kept from the record, whether with fraudulent intent or not, the law will not permit her to assert her title, upon his subsequent insolvency, as against those who gave him credit on the basis of his apparent ownership of the property. (Page 230.)

Appeal from Sebastian Chancery Court; *J. Virgil Bourland,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

J. A. McConnell conveyed to his wife, R. S. McConnell, all the real estate he possessed except that which he claimed as his homestead. At the time of the conveyance he owed individual and partnership debts amounting in the aggregate to nearly one thousand dollars. He had just begun to erect a brick hotel, and he contracted debts in the construction of that to the amount of $3,000. He denuded himself of all his property that could be

reached by execution, conveying same to his wife. The deeds were executed July 7, 1903. They were not placed on record until October 6, 1905. In the meantime, J. A. McConnell had executed a note, with others, for $1,800 to Linnie Hopkins as guardian of Bertha Hill, a minor. The note was executed March 9, 1904. It was payable one year after its date, and bore interest at ten per cent. On the 11th day of July, 1905, the note, being due and unpaid, was reduced to judgment in the sum of $2041. Execution was issued and levied upon the lands in controversy as the property of J. A. McConnell. Before the day of sale, R. S. McConnell, or some one for her, caused the deeds to be placed of record.

The sale did not take place. Then the appellee brought this suit in equity against J. A. McConnell, R. S. McConnell and W. F. McConnell to set aside these deeds made by J. A. McConnell and by W. F. McConnell and wife (at the instance of J. A.), and sought to have the lands subjected to her execution, alleging that the deeds were made with the fraudulent intent to cheat hinder and delay the creditors of J. A. McConnell, and further alleging that R. S. McConnell held the property in secret trust for the use and benefit of the said J. A. McConnell, her husband.

There were allegations in the complaint to the effect that the conveyances were wholly voluntary, and that since the conveyances were made J. A. McConnell has continued in the possession and control of the property and has held it out to the world as his own. The complaint alleged the insolvency of J. A. McConnell and the other makers of the note.

The answer of J. A. McConnell denied that the property was sold to cheat, hinder and delay creditors, admitted the debt and the transfer to his wife; also admitted that he remained in possession and had the control and management of the property, but denied that he held out the property as his own. He alleged that the consideration for the conveyances was the natural love and affection for his wife and a desire to secure for her a division of the property which at the time of the conveyance was all in his own name.

R. S. McConnell, appellant here, sets up in her answer that she and her co-defendant, J. A. McConnell, have been married for thirty years, during which time she has worked hard, and

the property described in the complaint was partly paid for with her money, and in consideration thereof and the great love and affection her husband had for her all the property was conveyed to her to be held in her own right; that, so far as she is informed and believes, the property was transferred in good faith without intent to defraud creditors.

It will be observed that Mrs. R. S. McConnell does not deny her husband's continued possession of the property, does not deny that the conveyances were voluntary, and that J. A. McConnell was involved in debt at the time the conveyances were made, nor does she deny that plaintiff extended the credit on faith of J. A. McConnell's ownership of said property. She does not deny that J. A. McConnell is insolvent, that he has no other property subject to execution, that the other judgment debtors are each and all insolvent and have no property subject to execution; nor does she deny that J. A. McConnell has improved the property transferred to her and occupied and controlled the same.

*Jesse A. Harp,* for appellant.

1. The right to own separate property, whether by gift, grant, inheritance, devise or otherwise, is secured to a married woman by law. Const. art. 9, § 7. And a voluntary conveyance from a husband to his wife is not invalid as against creditors unless the husband is indebted at the time of making the conveyance. 50 Ark. 42.

2. Appellee's debt was not in existence at the time the conveyances were made, the indebtedness of appellant's husband at that time, as is shown by the evidence, being only from $800 to $1,000, and that was assumed by W. F. McConnell. There being then practically no indebtedness, and the contemplated indebtedness for erecting the hotel being protected by the statutes in favor of laborers, mechanics and materialmen, it will not be presumed that the parties to the transaction were acting with fraudulent intent.

3. Appellee has no equitable right in the property because her debtor, appellant's husband, has none, except a possible curtesy right. 30 Ark. 267; 33 Ark. 336.

*Jos. M. Spradling* and *Geo. W. Dodd,* for appellee.

1: A conveyance, fraudulent as to existing creditors because of actual fraudulent intent to hinder, delay or defraud either prior or subsequent creditors, is invalid as to either class of creditors. Kirby's Digest, § 3658; 59 Ark. 614; 64 Ark. 415; 66 Ark. 419. Not only are conveyances by an embarrassed debtor to a near relative looked upon with suspicion, but they are, when voluntary, *prima facie* fraudulent, and when the debtor's embarrassment proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors. 73 Ark. 174; 50 Ark. 46; 45 Ark. 520; 46 Ark. 542; 75 Ark. 562; 14 Am. & Eng. Enc. of Law (2 Ed.), 300. However meritorious it may be within itself, if a voluntary conveyance leaves a debtor without sufficient property to meet his existing liabilities, it is fraudulent and void. 14 Am. & Eng. Enc. of Law (2 Ed.), 302; 59 Ark. 614; 150 Mo. 403; 73 Am. St. Rep. 456; 76 Ark. 509.

2. The facts show that there was no change of possession after the conveyances, the grantor holding same without accounting for rents, or agreement so to do, and no notice given either actual or constructive until after the levy of the execution. The facts are evidence of fraudulent intent. 20 Cyc. 554; 33 Ark. 328; 74 Ark. 186. Where deeds are withheld from the record so as not to injure the credit of the grantor, they are fraudulent as to subsequent creditors, regardless of the actual intent of the parties. 20 Cyc. 552; 69 Ark. 224; 66 Ark. 98; 24 Am. & Eng. Enc. of Law (2 Ed.), 113; 27 S. W. 341; 39 Am. Dec. 250; 95 *Id.* 246; 47 N. Y. Supp. 576; 76 Am. St. Rep. 567; 20 *Id.* 705; 86 *Id.* 914; 90 *Id.* 545; *Id.* 456; 13 Col. 245; 73 Mich. 481; 39 S. E. 231.

A settlement on the wife on the eve of a new business undertaking, and with a view to provide against its contingencies, is unavailing against creditors, either new or old. 1 Dears. & B. 327; 37 Pa. St. 433; 16 Irish Ch. 1; 15 *Id.* (N. S.), 571; 35 Ill. 558; 113 Ill. 318; 34 N. J. Eq. 160; 44 Pa. St. 413; 14 N. J. Eq. 106; 80 Am. Dec. 229. The burden of proving the good faith of the transaction is upon the wife seeking to uphold the conveyance against creditors of the husband. 10 S. E. 482; 33 S. E. 303; 90 Am. St. Rep. 499, note; 54 Pac. 359; 57 Pac. 908; 67 S. W. 561; 68 Ark. 162; 73 Ark. 174.

3. The property ought to be charged with appellee's debt, because the debtor has spent all his time and means in improving the same since the conveyance and since the creation of the debt, thereby enhancing the value of the property more than the amount of the debt. 67 Ark. 105; 75 Ark. 562; 59 Am. St. Rep. 462; 38 Am. St. Rep. 271; 21 Cyc. 1327; Bump on Fraud. Conv. (4 Ed.), 218.

4. The property having been conveyed to be held in secret trust for the benefit of the grantor, the conveyances are conclusively fraudulent. 20 Cyc. 565, 566, and note 23; Id. 562; 31 Ark. 671; 8 N. H. 288; Bump on Fraud. Conv. 239.

Wood, J., (after stating the facts.) The testimony clearly shows that J. A. McConnell, while in debt, and contemplating other debts to be contracted by him, conveyed all of his real estate, subject to execution, to his wife. He, however, remained in possession of the property, and continued to control and manage the same as before the conveyance. After the deeds were made he or she could have had same recorded at any time. But they did not do so until the property was levied upon and was about to be sold for his debt. The property continued on the tax books in his name, and he paid the taxes. He built the hotel after the transfer, borrowed money from various parties which was expended on the building, and contracted debts to the amount of $3,000 in its construction. These were all in his name. After the hotel was completed, he was the proprietor, and controlled and managed same. Mrs. McConnell only to a few friends communicated the fact that she owned the property. But there was in no respect a visible change of ownership. He rented the property and collected the rents. In short, to the outside world he appeared to be the owner of the property. The conveyance was entirely voluntary.

The appellee accepted the note because she considered J. A. McConnell solvent and the owner of the real property in his name. She would not have accepted the note without his name signed to it. She did not know as to the solvency of the other signers. He "had considerable property around him, and was handling considerable money, and was thought to be good for his debts."

It was shown, moreover, that J. A. McConnell after the conveyance spoke of the Grand View Hotel property as his own. But when the attorney of appellee was trying to get him to pay appellee's judgment, and when execution was threatened, he told the attorney that "he was not as sure as he thought he was." All this, and much more evidence in the record that it is unnecessary for us to review, convinces us that the judgment of the chancellor setting aside the conveyances was correct.

The law applicable to the facts proved in this record has been often declared by this court. Here was a voluntary conveyance by a husband to his wife under circumstances that, to say the least, cast grave suspicion upon the good faith of the transaction, and placed the burden upon appellant R. S. McConnell to show that the conveyance was not executed for a fraudulent purpose. See cases cited in appellee's brief and especially *Hershy v. Latham,* 46 Ark. 542; *Leonhard v. Flood,* 68 Ark. 162; *Wilks v. Vaughan,* 73 Ark. 174. In the latter case we said: "It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors."

The facts in the record warranted the conclusion that the deeds made by McConnell to his wife were by her kept from the record in accordance with an understanding and mutual plan on their part to give him good credit on the basis of his apparent ownership of the property, and then to defeat his creditors in the collection of their debts by spreading the deeds on the record in time to prevent the sale of the property for the payment of these debts. The law will not allow such subterfuges to circumvent creditors in the collection of their debts. Even if it could be said that the parties to the deed, under such circumstances, did not intend any actual fraud, the law will treat such conveyances as fraudulent and void any way, because the effect of such conduct operates as a gross fraud upon creditors. *Bunch v. Schaer,* 66 Ark. 104, and cases cited.

The court below found that the conveyances were made in

secret trust for the benefit of J. A. McConnell. Such finding is strongly supported by the evidence. And such conveyances are "conclusively fraudulent against creditors injured thereby." 20 Cyc. 562 and cases cited. *Sparks* v. *Mack,* 31 Ark. 671.

Decree affirmed.