GAVIN *v.* SCOTT.

Opinion delivered November 29, 1926.

1. FRAUDULENT CONVEYANCES—PRESUMPTION IN CASE OF INSOLVENCY.
   —The rule that a voluntary conveyance by an embarrassed debtor
   to members of his family is *prima facie* fraudulent, and that when
   the debtor's embarrassment proceeds to financial wreck the pre-
   sumption is conclusive as to existing creditors, does not apply in
   the case of subsequent or secured creditors.

2. FRAUDULENT CONVEYANCES—SECURED CREDITORS.—A secured cred-
   itor of an embarrassed debtor is in the same category, in regard

to voluntary conveyances by the debtor to his family, as subsequent creditors, since it will be presumed that secured debts will be fully paid by resort to the security, and any deficiency on foreclosure will be treated as a subsequent debt.

3. FRAUDULENT CONVEYANCES—EXISTING UNSECURED CREDITORS.—A conveyance by a debtor to his wife and children which left him insolvent is conclusively fraudulent as to unsecured creditors existing at the time of the conveyance.

Appeal from Yell Chancery Court, Dardanelle District; *W. E. Atkinson,* Chancellor; reversed.

*John M. Parker,* for appellant.

*Herbert C. Scott* and *Sam Rorex,* for appellee.

WOOD, J. On January 5, 1918, Gleason Brothers executed a note to John Gavin in the sum of $418.40, with interest thereon at the rate of ten per cent. per annum until paid. John Gavin died, and W. L. Gavin was appointed administrator of his estate. On the 13th of September, 1923, the administrator recovered judgment against J. H. and W. J. Gleason, members of the firm of Gleason Brothers, in the sum of $657.30. Long prior to this time, to-wit, on the 6th of April, 1921, J. H. Gleason executed to Nancy C. Gleason, his wife, Jerry G., Luther H., Floy, and George G. Gleason, his children, a deed to 455.74 acres of land in Yell County, Arkansas, and also a part of a block in the town of Dardanelle, Yell County, Arkansas. The deed recites that it was executed for a consideration of $1 and love and affection.

On the 13th of November, 1923, this action was instituted by W. L. Gavin, administrator of the estate of John Gavin, deceased, against the estate of J. H. Gleason and the widow and children of J. H. Gleason, to set aside the above deed and also a deed of Nanny C. Gleason, dated January 31, 1922, to Jerry G. Gleason. H. C. Scott was appointed administrator *ad litem* for the estate of J. H. Gleason and guardian *ad litem* for the minor children. It was alleged in the complaint that these deeds were voluntary conveyances, and that they were fraudulent and void as against the judgment in favor of the estate of John Gavin. An amendment was later filed to the complaint in

which it is alleged that an execution had been issued on the above judgment and placed in the hands of Joseph Gault, sheriff of Yell County, and that the sheriff had failed to levy such execution prior to the death of J. H. Gleason, and, after such death, that the sheriff declined to levy on the lands described in the original complaint. The plaintiff prayed that the sheriff be made a party and that an order be issued commanding him to levy on the lands described in the complaint. An answer was filed by the administrator *ad litem* of the Gleason estate and as guardian *ad litem* for the minor heirs of J. H. Gleason. The execution of the deed in controversy was admitted, but the defendant denied that it was fraudulent and void as to the plaintiff. The defendant Gault answered and alleged that he did not levy the execution on the lands put in his hands by the attorney for the plaintiff for the reason that, upon investigation, he ascertained that these lands had been deeded to other persons, and that the record showed that the lands were not the property of the defendant in the execution, and for the further reason that the defendant in execution had died after the execution came into his hands.

The plaintiff introduced a certified copy of the judgment mentioned in the complaint and the deed in controversy. Gault testified that he was the sheriff of Yell County, and that he made the return on the execution placed in his hands by the plaintiff's attorney, "that no property clear of mortgage was found in the name of J. H. Gleason upon which to levy the same." As far as he was able to find from the records, J. H. Gleason, at that time, was insolvent. Gleason lived two or three days after he received the execution. He had been sick for two years before that time. We deem it unnecessary to set out all the testimony bearing upon the issue as to whether or not J. H. Gleason was insolvent at the time the deed in controversy was executed. It suffices to say that the uncontroverted proof shows that, at the time this deed was executed, the firm of which Joseph H. Gleason was a member had contracted debts, and, among

them, the debt to John Gavin, the foundation of this action, which had not been paid. An action had been instituted to foreclose a mortgage on one of their debts in the sum of more than $9,000, and there were also other debts, unsecured, outstanding at that time. Efforts, at that time, had been made and were being made to collect the debt to John Gavin, but without success. J. H. Gleason offered to pay one-half of the note if he could be released from liability for the other half. Thus the note, at the time of the execution of the deed in controversy, remained unpaid.

While there was testimony on the part of the defendants tending to show that, at the time the deed in controversy was executed, J. H. Gleason had sufficient assets to pay all of his indebtedness, nevertheless the debt in controversy was not paid; and the execution of this deed left J. H. Gleason without sufficient property to pay the debt to John Gavin. His own son testified that there was no unincumbered land belonging to the estate of J. H. Gleason; that there was no unincumbered personal property belonging to the estate, and no personal property belonging to the firm of Gleason Brothers, and none belonging to the firm of J. H. Gleason & Son. "He (J. H. Gleason) didn't have any estate at the time of his death," says the witness. It thus appears that J. H. Gleason, at the time of the execution of the deed in controversy, was an embarrassed debtor. The debt his firm owed to John Gavin was at that time an existing indebtedness. The debt had been contracted by the firm of Gleason Brothers in 1918. By the execution of this deed, as is shown by the undisputed testimony, J. H. Gleason rendered himself wholly insolvent.

In *Wilks* v. *Vaughan,* 73 Ark. 179, 83 S. W. 915, we said: "It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care, and when they are voluntary they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial

wreck they are presumed conclusively to be fraudulent as to existing creditors." Other cases announcing the doctrine are *McConnell* v. *Hopkins,* 86 Ark. 225, 110 S. W. 1039; *Brady* v. *Irby,* 101 Ark. 573, 142 S. W. 1124, Ann. Cas. 1913E, 1054; *Papan* v. *Nahay,* 106 Ark. 230, 152 S. W. 107; *Simon* v. *Reynolds-Davis Gro. Co.,* 108 Ark. 164, 156 S. W. 1015; *Burke* v. *New England National Bank,* 132 Ark. 268, 200 S. W. 1018; *Farmers' State Bank* v. *Foshee,* 170 Ark. 445, 280 S. W. 380.

The above rule does not apply in favor of subsequent creditors, nor creditors whose debts, at the time of the conveyance, are secured. The latter are in the same category as subsequent creditors, for the reason that it will be presumed, and must be assumed, that creditors whose debts are secured will be fully paid when their security is resorted to, and, if there be a deficit, this is treated as in the same attitude as a subsequent debt. *Home Life & Accident Ins. Co.* v. *Schichtl, ante* p. 31.

Gavin's debt was unsecured, and he was an existing creditor at the time of the conveyance in controversy, and the undisputed testimony shows that Gleason, at the time of the conveyance, even if not insolvent, was an embarrassed debtor, and the conveyance rendered him thereafter wholly insolvent. Therefore the court erred in not holding that the conveyance in controversy was conclusively fraudulent as to Gavin. The decree is reversed, and the cause is remanded with directions to the trial court to enter a decree setting aside the conveyance, in so far as it affects the rights of Gavin, and to subject the property conveyed to the payment of his judgment, and for such other and further proceedings as may be necessary, according to law and not inconsistent with this opinion.

HART, J., (dissenting). It seems to me that much confusion will result from the application of the rule in the *Wilks* v. *Vaughan* case to the facts in the case at bar, and that of the *Home Life & Accident Co.* v. *Schichtl.*

As I understand the rule in the Wilks-Vaughan case, there is a conclusive presumption of fraud as to existing creditors if the grantor, at the time, is greatly embarrassed or so largely indebted that his conveyance necessarily has the effect to hinder and delay creditors. This seems to be the interpretation placed upon it in the present case, but the application seems to be wholly at variance with that in the Schichtl case.

In the present case, the voluntary conveyance was made more than two years prior to the rendition of the judgment sought to be enforced against the debtor. The conveyance was held to be fraudulent because it necessarily had the effect to hinder and defraud existing creditors. In the Schichtl case, the conveyance was made only seven days before the rendition of the judgment against the debtor, and his embarrassment proceeded to financial wreck just as soon as his property could be sold under the foreclosure decree. The court in that case seems to have proceeded upon the theory that, in addition to showing that the conveyance was a voluntary one and that the party seeking to impeach it was at the time a creditor of the grantor, the additional fact of insolvency at the time must be shown. In other words, that the conveyance necessarily had the effect to hinder and defraud existing creditors in the collection of their debts was not sufficient. But it is insisted that, because the creditor in the Schichtl case had a mortgage on certain lands of the grantor, who made the voluntary conveyance, this placed him in the attitude of a subsequent creditor.

As it appears from our dissent in the Schichtl case, this holding is directly opposed to the rule announced in the Mallory case, and there has been no express overruling of the latter case. There might be some reason in holding that a mortgagee whose mortgage is not due should be considered in the nature of a subsequent creditor where the debt is shown to be fully secured by the mortgage, for then the debtor might be in the same condition legally as if he were free from debt. To my mind,

the case it quite different where the mortgagee is seeking to foreclose his mortgage and thereby collect his mortgage debt. In such a case the mortgagee is trying by every means available to him to collect a past-due indebtedness, and should be considered an existing creditor. If I am correct in my reasoning in the matter, a contrary or different application has been made of a settled principle of equity in these two cases which calls for a dissent on my part in this case because the application is different from that made by the majority in the Schichtl case.