CAVE *v.* ZIMMERMAN.

4-5552             130 S. W. 2d 717

Opinion delivered July 3, 1939.

*W. P. Beard,* for appellant.

*Chas. A. Walls,* for appellees.

MEHAFFY, J. The appellees, William Zimmerman and Leah Zimmerman, his wife, on January 1, 1926, made, executed and delivered to the New England Securities Company, their mortgage bond for the sum of $4,000, due and payable on January 1, 1933.

On May 18, 1933, they deeded to their daughter, Faye Dickerson, land in Lonoke county which was not included in the mortgage. A suit to foreclose the mortgage

was instituted in the Lonoke chancery court in April, 1935. A decree of foreclosure was entered and the land was sold to satisfy the debt, but left a balance due of $1,851.46.

There is practically no dispute about the facts. The appellees, William Zimmerman and Leah Zimmerman, executed a mortgage to the New England Securities Company on land not involved in this suit; at the time the mortgage was given, Zimmerman did not own this land; he inherited it from his father; his father made a will in which the land involved in this suit was bequeathed to appellee, Zimmerman, and three other children of his father, Peter Zimmerman. Peter Zimmerman died in 1931 about five years after the mortgage was executed. The evidence does not show when the will was probated and just when appellee, Zimmerman, came into possession. His deed to his daughter was made May 18, 1933, practically two years before this suit was begun.

A decree was rendered on October 7, 1938. The chancellor found that the deed from William Zimmerman to Faye Dickerson, dated May 18, 1933, was executed for a good and valuable consideration, and that it was not executed in fraud of his creditors, as alleged in the complaint; that the intervention of J. R. Moery should be sustained, insofar as his right to remove the pumping and rice equipment and electric motor from said premises is concerned, as said equipment was installed on said premises with the right to remove it; that the complaint of Thomas H. Cave should be dismissed for want of equity, and the writ of attachment sued out herein, canceled and dismissed; that the intervention of G. W. Smith, John Zimmerman, Edward Zimmerman and Lydia Helmuth should be dismissed for want of equity, and the writ of execution levied on said premises in favor of G. W. Smith should be canceled, and the sheriff's deed based on said writ of execution and levy should be canceled, set aside and held for naught.

Thomas H. Cave prosecutes this appeal to reverse said decree and urges that the deed from William Zim-

merman to his daughter is a voluntary conveyance and made in fraud of creditors.

William Zimmerman inherited from his father only one-fourth of the 108.5 acres which are involved in this suit. The evidence tends to show that William Zimmerman owed his daughter $500; that is, he had given his other daughters wedding presents of that amount, and decided to give her the same value. Zimmerman also testified that he owed Charles H. Dickerson $651.95. Charles H. Dickerson is the husband of Faye Dickerson to whom the conveyance was made.

The first case to which appellant calls attention is *Wilks* v. *Vaughan,* 73 Ark. 174, 83 S. W. 913. It is true that in that case the court said: ''It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors.''

The rule announced in the case of *Wilks* v. *Vaughan, supra,* has been approved many times by this court; but it does not apply to subsequent or secured creditors. The court also said in the above case, immediately following the above quotation: ''Certainly, these conveyances, made so shortly before this judgment, divesting the debtor of all tangible assets, to near relatives, were sufficient to cast the burden of proving the good faith upon the parties to them. The chancellor has held them fraudulent, and this court cannot pronounce that finding contrary to the preponderance of the evidence.''

The conveyance in the instant case was made about two years before the judgment. In the Wilks case the chancellor held that the conveyances were fraudulent. In the instant case the chancellor held that it was not fraudulent. Another difference is that in the Wilks case the creditor seeking to set aside the conveyances was not a subsequent or secured creditor.

The next case to which attention is called by appellant, and upon which he relies, is *Brady* v. *Irby*, 101 Ark. 573, 142 S. W. 1124, Ann. Cas. 1913E, 1054. That case quoted with approval the statement made in *Wilks* v. *Vaughan, supra*. In that case the court did not find that the conveyance was void as to subsequent or secured creditors, and the chancellor in that case found the conveyance was voluntary and void as to existing creditors.

Appellant next calls attention to the case of *Melton* v. *State,* 177 Ark. 1194, 10 S. W. 2d 500. That is one of the cases where the court ordered the opinion omitted and not published, as of no value as a precedent.

Appellant calls attention to a great number of cases holding that voluntary conveyances are presumed to be *fraudulent* if the grantor is insolvent; but as we have already said, this rule does not apply to subsequent or secured creditors.

In an opinion written by the late Chief Justice McCulloch, in the case of *Home Life & Accident Co.* v. *Schichtl,* 172 Ark. 31, 287 S. W. 769, the rule in this state was well stated: "We have a case now of mortgage indebtedness, and the real question, so far as the case relates to presumption, is whether or not such conclusive presumption should be indulged in favor of the holder of the secured debt. The reason for indulging presumptions does not apply, we think, under those circumstances, and the authorities support the view that there is no presumption under those circumstances. May on Fraudulent Conveyances, p. 188; *Welch* v. *Mann,* 193 Mo. 304, 92 S. W. 98; *Cromby* v. *Young,* 26 Ont. 194. The reason for this distinction in putting secured creditors in the same category as subsequent creditors is that, whatever presumption is to be indulged, the creditor, in selecting his security, has, unlike a general creditor, disregarded other property of the debtor and looked only to his security for the collection of his debt, hence he is entitled to no presumption of fraud in the conveyance of other property. Such a creditor is one who has already been given a preference over others, and is not in the attitude of an existing general creditor, hence his reliance is deemed

to have been founded on his security rather than on the solvency of the debtor.''

This court again said that is thoroughly settled that conveyances made to near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care, and when they are voluntary, they are *prima facie* fraudulent. The court added, however: ''The above rule does not apply in favor of subsequent creditors, nor creditors whose debts, at the time of the conveyances, are secured. The latter are in the same category as subsequent creditors, for the reason that it will be presumed, and must be assumed, that creditors whose debts are secured will be fully paid when their security is resorted to, and, if there be a deficit, this is treated as in the same attitude as a subsequent debt.'' *Gavin* v. *Scott,* 172 Ark. 234, 288 S. W. 391.

If the conveyance in the instant case was voluntary, there would be no presumption of fraudulent intent; but the burden would be on one attacking the conveyance to show actual fraud. The chancellor held that the conveyance was not voluntary, but was executed for a good and valuable consideration, and was not in fraud of creditors. We do not think the chancellor's finding was against the preponderance of the evidence.

The decree is affirmed.