ROBINSON *v.* BIGGER.

4-5807 137 S. W. 2d 738

Opinion delivered March 4, 1940.

*A. J. Cole, W. P. Smith* and *H. W. Judkins,* for appellant.

*Schoonover & Schoonover* and *Ponder & Ponder,* for appellee.

MEHAFFY, J. On February 2, 1933, the appellants, T. H. Robinson and Mollie Robinson, his wife, executed and delivered to Tom Bigger promissory notes amounting to $1,208.64, due October 15, 1933, bearing interest at the rate of 10 per cent. per annum and on the same day executed and delivered to said Bigger a real estate mortgage on certain lands to secure the payment of said notes. On June 15, 1937, Tom Bigger instituted suit on the notes and to foreclose the mortgage lien. At the time suit was filed the appellants, T. H. and Mollie Robinson, were the owners of other lands.

The appellants, on August 11, 1937, executed to J. T. Robinson, their son, all of the lands owned by them that were not embraced in said mortgage for the recited consideration of $1 and love and affection. The debt to Bigger was not paid, and after suit was brought to foreclose the mortgage, but before the decree was rendered, the deed to the son was made.

On October 25, 1937, the chancery court gave judgment on the notes in favor of Bigger, and ordered the land sold by the commissioner. The sale was made and both the appellee and T. H. Robinson, appellant, were present at the sale. The property was purchased by appellee for $475, which was credited on the judgment, leaving a balance of more than $1,200 due Bigger from

the appellants. An execution was issued and returned *nulla bona* on November 11, 1938. Both T. H. and Mollie Robinson, according to the return of the sheriff, stated that they had no goods, chattels or property of any kind with which to pay. Everything was in their son's name.

On December 5, 1938, the appellee instituted this action against T. H. Robinson and Mollie Robinson, and their son, J. T. Robinson, to cancel and set aside the deed from the Robinsons to their son. The lands which were conveyed to the son were described in the complaint.

The appellants filed answer denying the material allegations in the complaint.

T. H. Robinson, one of the appellants, testified in substance that he is the father of J. T. Robinson and the husband of Mollie Robinson. J. T. Robinson is 23 years old and is single; lives with his parents and has continuously since suit was filed by appellee; that on August 11, 1937, he conveyed the lands to his son, J. T. Robinson, and stated that the deed calls for $1 and other valuable considerations, but that his son was to pay off the mortgages on the lands conveyed to him; the son made certain payments with the money that came off the farm; he farms and does other work; made a crop on some of the land before it was deeded to him; that he had no property left after he deeded this to his son; just had one pair of mules.

J. T. Robinson testified that he would be 23 years old in August, is unmarried, lives with his father and mother; was present when the father and mother deeded him the property; does not know when deeds were made up and signed; they told witness that when he became 21 years old, if he would not go to the army they would deed him the property; he did not go, and that was the main reason; he had no money at the time the deed was given to him and paid no money for the deed; put the deed on record and paid the Federal Land Bank money out of the rents of the land and made some payments to Ada Baker; has no other property except this deeded to him by his parents; did not know at the time that

Tom Bigger had a judgment against his father; saw it in the paper; did not know that the property failed to bring enough to pay the debt; he learned about the suit when it came out in the paper and learned later that the property did not bring enough to pay the debt; his parents told him the night after the sheriff came there with the papers that they had been served with summons.

There was other evidence introduced showing that parties had rented the land from J. T. Robinson.

Tom Bigger testified about the indebtedness and how long he had waited and about the suit to foreclose the mortgage, and that the suit was pending to foreclose when the Robinson's conveyed land to their son; that Robinson wanted Bigger to take a quit claim deed to the mortgaged property in satisfaction of the debt; Bigger was willing to take a warranty deed which they refused to give; there was some question about the title to a portion of the property mortgaged; that none of the appellants owned any property other than that deeded by the parents to the son.

The chancery court found that on February 2, 1933, the defendants, T. H. Robinson and Mollie Robinson, for value received, executed and delivered to Tom Bigger two promissory notes, one for $1,100 and one for $108.64, due and payable October 15, 1933, bearing interest from date until paid at the rate of 10 per cent. per annum, and that on the same day, to secure the payment of said notes, the said T. H. and Mollie Robinson, made, executed and delivered to the plaintiff, Bigger, their real estate mortgage on 70 acres of land, describing the land; that on June 15, 1939, plaintiff, Tom Bigger, instituted suit in the Randolph chancery court against the defendants, T. H. and Mollie Robinson, service of summons being had on the same day for collecting the balance due on said notes and a declaration of lien on said lands, and a foreclosure; that at the time of the institution of said suit, T. H. Robinson and Mollie Robinson were the owners of certain lands, describing same. The court found that during the pendency of the suit to foreclose, and notwithstanding the indebtedness due to the plaintiff, and

the inadequacy of the security, T. H. and Mollie Robinson did, on August 11, 1937, fraudulently convey all of said land then owned by them and not covered by this mortgage, to the defendant, J. T. Robinson, who is the son of the other defendants, for the consideration of $1 and love and affection. The court further found that the conveyances were made for the express purpose of defrauding, hindering and delaying the plaintiff, Tom Bigger, in the collection of his said indebtedness and interest; that said conveyances were made during the pendency of this suit in order to prevent plaintiff from realizing upon the anticipated judgment, which he later obtained. The court further found that all of the defendants knew, both actually and constructively, of the said indebtedness due the plaintiff, Bigger; that they well knew and understood that said purported conveyance was a contrivance designed to hinder and delay plaintiff, and that all said defendants participated in the fraudulent intent. The court further found that said conveyances rendered the plaintiffs, T. H. and Mollie Robinson, wholly and completely insolvent and judgment proof, and had the effect of denuding them of all property of every kind and wholly without funds or property with which to satisfy the debt of Bigger; that thereafter, on October 25, 1937, a decree was rendered in favor of Bigger in the Randolph chancery court against the defendants, T. H. and Mollie Robinson, for $1,683 and all costs; that the mortgaged land was sold and Bigger became the purchaser and deed was made by commissioner and confirmed by the court. The court gave judgment in favor of Bigger in the sum of $1,256.50 with interest and $48.50 costs, and found all of the issues in favor of Bigger. The decree canceled and set aside the deed from Robinson and wife to their son, and held that the title to the property was in the defendants, T. H. Robinson and Mollie Robinson. The case is here on appeal.

There is very little dispute about the facts. The deed made by Robinson and wife to their son recited a consideration of $1 and love and affection, but they testify that in addition to that, he was talking about

entering the army and they agreed that if he would not do that, they would deed him this land, and they say that it was subject to a mortgage to the Federal Land Bank and Mrs. Ada Baker. It could not have been otherwise; that is, whoever bought the land would necessarily take it subject to the mortgage. When the original mortgage was made to Bigger, the Robinsons owned this other land. They had not paid him anything for some years, and it was discovered by Bigger just prior to his bringing the suit to foreclose the mortgage, that there was a defect in the title to the land mortgaged to him. He offered to take a warranty deed to the land in satisfaction of the entire debt, but Robinson would not give a warranty deed, evidently because the title was not good, but offered him a quit claim deed, which Bigger declined to accept. When the Robinsons conveyed this land to their son, it left them without any property. Robinson was insolvent. He testifies himself that he had no property, and it is undisputed that both Mr. and Mrs. Robinson told the sheriff who levied the execution that neither of them had any property. Suit to foreclose the mortgage had already been filed and summons served before this deed to the son was made. He was living with his parents and learned that night that the summons was served, after it was served during the day. They all evidently knew all about the debt that Robinson owed to Bigger, and knew about the defect in the title to the mortgaged property, and, therefore, knew that it was not adequate security for the debt.

Appellants call attention to several cases, the first one is *Home Life Accident Co.* v *Schichtl*, 172 Ark. 31, 287 S. W. 769. It is true the court said in that case, as quoted by appellants, that a voluntary conveyance by a party to his wife or child, though he be indebted at the time, is *prima facie* only, and not conclusively fraudulent. But the court also said in the same case: "Every voluntary alienation of his property by an embarrassed debtor is presumptively fraudulent against existing creditors."

The court also said in that case that the reason for indulging the presumption of fraud did not apply in that case; that there was no presumption under the circumstances existing; but the court also said: ''The reason for this distinction in putting secured creditors in the same category as subsequent creditors is that, whatever presumption is to be indulged, the creditor, in selecting his security, had, unlike a general creditor, disregarded other property of the debtor and looked only to his security for the collection of his debt, hence he is entitled to no presumption of fraud in the conveyance of other property. . Such a creditor is one who has already been given a preference over others, and is not in the attitude of an existing general creditor, hence his reliance is deemed to have been founded on his security rather than on the solvency of the debtor.''

The reason does not apply in this case because before this conveyance to the son was made, and before suit was brought to cancel the deed, it had been discovered by Bigger that there was a defect in the title to the land that had been mortgaged to him, and Robinson knew of this, and, therefore, refused to give him a warranty deed, but offered him a quit claim deed in satisfaction of the debt. They, therefore, knew before the conveyance was made to the son that the security was inadequate, and that the title to the property was defective.

Attention is, also, called to the case of *Gavin* v. *Scott*, 172 Ark. 234, 288 S. W. 391, and that case also holds that the rule does not apply in a case of secured creditors, and gives the same reason as is given in the former case.

Appellants also call attention to the case of *Bertrand* v. *Elder, et al.*, 23 Ark. 494. This case also holds that the presumption of fraud is not conclusive as to secured creditors.

Appellants next call attention to *Wilkes* v. *Vaughan*, 73 Ark. 174, 83 S. W. 913. In that case the court said: ''It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with

suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors." *Barham* v. *Fed. Reserve Bank,* 176 Ark. 1082, 5 S. W. 2d 318.

The next case to which appellants call attention is *Cave* v. *Zimmerman, et al.,* 198 Ark. 684, 130 S. W. 2d 717. That case also held that secured creditors were in the same category as subsequent creditors, and gave the reason why there was a different rule applying to them and existing creditors. The court further said:

"This court again said that it is thoroughly settled that conveyances made to near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care, and when they are voluntary, they are *prima facie* fraudulent."

"The view taken by some courts is that the existence of valid and adequate security in favor of a creditor seeking to set aside a fraudulent transfer of other property by his debtor has no effect upon the right of such creditor to maintain his action. Other courts, however, have taken the contrary view on this question. If the security is invalid, it can have no effect, ordinarily, upon the right of such creditor to set aside a fraudulent conveyance made by his debtor. The rule in some jurisdictions is that before a secured creditor may maintain an action to set aside a fraudulent conveyance of his debtor, he must show that at the time such conveyance was executed the security was inadequate to satisfy the indebtedness." 24 Am. Jur. 280, 281.

The law with reference to fraudulent conveyances is well settled in this state. Attention is called to § 6071 of Pope's Digest providing that conveyances of any estate or interest in lands made or contrived with the intent to hinder, delay, or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void.

In the annotations to the case of *Marshall & I. Bank* v. *Stepke*, 228 Wis. 39, 279 N. W. 625, 116 A. L. R., 1042, it is stated: "In several cases where it appeared that the creditor had foreclosed a mortgage held by him and secured a deficiency judgment, it has been held that such creditor could maintain an action to set aside as fraudulent a conveyance by his debtor of other property."

The authorities as to subsequent and secured creditors, we think, have no application here, for the reason that before suit was begun in this case, the mortgage had been foreclosed, the property sold, and a deficiency judgment had. The reason given is that a defect was discovered in the title to the mortgaged property. The son to whom the conveyance was made had no property, the parents who made the conveyance had no property except that conveyed.

The chancellor found that at the time this suit was begun, T. H. Robinson and Mollie Robinson were the owners of the lands which they afterwards conveyed to their son; that during the pendency of the suit to foreclose, and notwithstanding the indebtedness due to the plaintiff and the inadequacy of the security, T. H. Robinson and Mollie Robinson fraudulently conveyed all said land then owned by them and not covered by this mortgage, to their son, J. T. Robinson for $1 and love and affection; that the conveyance was made for the express purpose of defrauding, delaying and hindering the plaintiff, Tom Bigger, in the collection of his debt. The chancellor further found that all the defendants both actually and constructively, knew of the said indebtedness to the plaintiff; that they all knew and understood that the purported conveyance was a contrivance designed to hinder and delay plaintiff, and that all the said defendants participated in the fraudulent intent; that T. H. Robinson and Mollie Robinson were wholly and completely insolvent.

The rule is well established that the findings of a chancellor will not be set aside or reversed by this court unless such findings are against the preponderance of the evidence. We think the chancellor's findings are supported by the evidence and the decree is affirmed.