BARRY, TRUSTEE v. CASSINELLI.

4-5948                               140 S. W. 2d 112

. Opinion delivered May 13, 1940.

Carl F. Jaggers, for appellant.

Longstreth & Longstreth and E. B. Dillon, for appellees.

GRIFFIN SMITH, C. J.   By deeds of June 29, 1932, and July 1, 1934, Mrs. Elizabeth Cassinelli conveyed to her daughter, Elizabeth Louise Cassinelli, certain real property in North Little Rock.  The conveyances were subject to mortgage debts owed by her mother.

Floyd Barry, as trustee, sued to have the conveyances set aside on the theory that the mother was insolvent when the deeds were executed; that she anticipated foreclosures and deficiency judgments, and, without consideration, transferred to her daughter the city lots which form the subject-matter of the litigation.

The daughter will hereafter be referred to as Louise, and the mother as Elizabeth.

At the time her husband died in 1916, Elizabeth's family consisted of eight children, the youngest being Amelia.  The estate, largely, was composed of unimproved real property known as Cassinelli Addition.

Amelia, taking the lead in business matters, but acting for her mother, had forty houses constructed. In 1932 the holdings were estimated to be worth $175,000. Amelia's plan was to borrow a sum sufficient to build a house, mortgage the property for construction value, then sell subject to the mortgage, taking notes for the equity. In appellee's brief it is stated that "In no event was the amount of the first mortgage in excess of fifty per cent. of the value of the property, and many times it was as low as twenty-five per cent."

The record reveals through testimony on behalf of appellees that financial difficulties were not experienced until 1933, although appellant insists there was knowledge of inevitable default prior to 1932, when Elizabeth executed the first deed to Louise, and that defaults had occurred prior to consummation of the 1934 transaction.

It is insisted by appellees that in 1934 Elizabeth owned improved property worth approximately $108,000, against which there was an indebtedness of $35,000, and that in addition to these equities of $73,000 she owned between $35,000 and $40,000 of second lien notes. Rental income, until 1935, was $8,705 per year.

The first foreclosure decree was March 2, 1936; the last, May 26, 1937. Amelia testified that the attorney who represented plaintiffs in foreclosure actions agreed to bid debt, interest, and cost for the property. She was assured there would be no deficiency judgments. Relying upon such assurances, and as agent for her mother, she permitted the sales without defense.

Some, if not all, of the loans negotiated by Elizabeth were made by American Exchange Bank, with which appellant was connected. One of the Cassinelli judgments—on a note for $200—was rendered in Barry's favor, the deficiency being $90. Other judgments were assigned to him as trustee.

The trial court found that all of the deficiency judgments were rendered after Elizabeth had executed the two conveyances to Louise, that Barry stood in the position of a subsequent creditor, and that the deeds were not a fraud upon creditors.

Chief Justice McCulloch, in *Home Life & Accident Co.* v. *Schichtl,* 172 Ark. 31, 287 S. W. 769, said: "We have the case now of a mortgage indebtedness, and the real question, so far as the case relates to presumption. is whether or not such conclusive presumption should be indulged in favor of the holder of the secured debt. The reason for indulging presumptions does not apply, we think, under these conditions. . . . The reason for this distinction in putting secured creditors in the same category as subsequent creditors is that, whatever presumption is to be indulged, the creditor, in selecting his security, has, unlike a general creditor, disregarded other property of the debtor and looked only to his security for the collection of his debt, hence he is entitled to no presumption of fraud in the conveyance of other property. Such a creditor is one who has already been given a preference over others, and is not in the attitude of an existing general creditor; hence his reliance is deemed to have been founded on his security rather than on the solvency of the debtor. It seems to us that this is a sound distinction; but, at any rate, the trial court has necessarily found in this case that there was no insolvency on the part of the debtor, and no intention to defraud."

The rule announced in the Schichtl Case is applicable here. The trial court, of necessity, found that there was no insolvency when the conveyances were made, therefore no fraud.

If the trial court, or this court, could look into the minds of the Cassinellis and determine their thoughts in 1932 and in 1934, it is possible the fact might be reflected that apprehension of impending financial disaster suggested the course taken, and that the deeds to Louise were made in anticipation of insolvency. Contrariwise, we might find that there was still expectation of rehabilitation.

Under the rule stated for the court in the Schichtl Case, and in *Cave* v. *Zimmerman,* 198 Ark. 684, 130 S. W. 2d 717, the chancellor was justified in holding the transactions valid, and the decree must be affirmed. It is so ordered.