Less *v.* Manning.

4-6278                                                   149 S. W. 2d 40

Opinion delivered March 31, 1941.

[redacted]

*Willis Townsend* and *Wallace Townsend,* for appellant.

*Joe K. Mahony, Tom F. Digby, Jr.,* and *Tom F. Digby,* for appellee.

GRIFFIN SMITH, C. J.   The appeal is from a decree dismissing for want of equity a complaint in which it was alleged that Mrs. Kate McRae Bracy disposed of 82 acres of land in Union county with the fraudulent intent to defeat creditors.[1]

July 15, 1927, L. K. Snodgrass, Julia G. Snodgrass, S. V. Bracy, and Kate M. Bracy delivered to Bankers Trust Company, of Little Rock, agent, their executed notes aggregating $47,500, secured by deed in trust[2] on

---

[1] Plaintiffs are:   Arthur, Ruth, and Stanley Less; the Commercial National Bank, of Little Rock, trustee of the estate of H. L. Remmel, deceased; Jo Frauenthal, administrator with the will annexed of the estate of Sam Frauenthal, deceased; the Commercial National Bank, of Little Rock, trustee of the estate of T. J. Darragh, deceased; Jarrett and Norma Davis, and Sam Davis, Jr.; Mrs. W. W. Wilson; F. J. Schmutz, administrator of the estate of Mary B. Amis, deceased; Mrs. Olive Jeanette French, Miss Minnie Melton, Ed. Narkinsky, Miss M. N. Repetti; the Commercial National Bank, of Little Rock, trustee for Mrs. M. D. Hyatt; and the Commercial National Bank, of Little Rock, as trustee for Maxine Anderson.   The land is described as west half of the southwest quarter of section 28, township 16 south, range 18 west, and two acres, more or less, in the fractional north half of the northeast quarter of section 33 of the same township and range, described by metes and bounds.   An amendment to the complaint made allegations as to disposition of 5.04 acres, details of which are not material to this opinion.

[2] L. K. Snodgrass and S. V. Bracy, when the notes and deed were executed, were partners in the drug business.   The business was incorporated in 1933.   Julia G. Snodgrass was the wife of L. K. Snodgrass, and Kate M. Bracy (sometimes referred to as Mrs. Kate McRae Bracy) was the wife of S. V. Bracy.

certain real property.[3]  The notes became due July 15, 1932.  The indebtedness was reduced to $42,000, and maturity was extended to July 15, 1934.[4]  There is testimony of an oral agreement under which maturity was extended to January 29, 1941, with payment of $2,000.

By indorsement of May 4, 1936, the indebtedness was assigned to Mortgage Loan & Insurance Agency, Inc., agent.

Mrs. Bracy died intestate in May, 1939.  June 30 of the same year Van E. Manning was appointed administrator of Mrs. Bracy's estate.  Manning's wife is a daughter of the Bracys.

Claims on behalf of noteholders were allowed July 27, 1939, by Manning, administrator.  There was approval by the Pulaski probate court two days later.  The order recites that interest had been paid[5] to January 15, 1939.

Two witnesses familiar with Little Rock real estate testified for plaintiffs.  Opinion of one was that at forced sale the Main street property would probably bring $22,500, but in the open market with six months within which to procure a purchaser, it might be worth $25,000.[6]  The Markham street property was valued at from $5,250 to $5,550.

The second realtor valued the Main street property at $1,000 per front foot.[7]  This witness thought the Markham street property was worth from $6,500 to $7,500.

---

[3] West 50 feet of lots 10, 11, and 12, block 33, and the south half of lot 10, block 78, Little Rock.

[4] A prior extension had advanced maturity to July 15, 1933.

[5] The interest rate was 5 per cent. per annum, and 10 per cent. after maturity.  The claims were classified as third class.  Pope's Digest, § 97.

[6] The same witness testified that "Without improvements on the Main street property I would cut it down to about $17,500—that 25 feet, or $16,000 for the 25 feet if the improvements were not on it."

[7] The reference was to "property on the west side of Main street between Markham and Second, assuming that the buildings are all old, fairly well maintained as to condition—in other words, $25,000 as to the value of any of the property in the middle of the block. In 1937 we sold the north 39 feet of lot 9 to Arkansas Amusement Corporation for $36,500.  It is immediately south of the Snodgrass & Bracy property.  That was for less than $1,000 a foot, but the buildings were not in as good a state of repair as [the Snodgrass & Bracy] buildings.  It was a cash sale, but for a specific purpose."

If, as one of appellants' witnesses believed, the Main street property exclusive of improvements was worth a minimum of $16,000, and the Markham street property had a minimum value of $5,250 with improvements, and if insurance of $20,000 carried on the Main street property improvements and $12,000 carried on the Markham street improvements should be added, the total would be $53,250. This assumption presupposes that the improvements were not overinsured.[8]

At present Snodgrass and Bracy are paying $350 per month, which is slightly in excess of interest at 5 per cent., taxes, insurance, etc.

There was testimony on appellees' behalf that in 1934 the Union county lands were worth "about $5 per acre and up." Actual value of a particular tract would depend on oil potentiality, it was said.

Appellees insist that the Union county lands were not a gift to Mrs. Manning. Alfred Bracy[9] was in the roofing business and needed capital. Sam Bracy, Jr., and Mrs. Manning, turned over to Mr. and Mrs. Bracy certain stocks, the value of those surrendered by Mrs. Manning being from $2,400 to $3,000. Using Mrs. Manning's stock, and certificates belonging to Sam Bracy, Jr., S. V. Bracy borrowed money for Alfred's needs.[10] There was an understanding that the stocks would be returned, or that property of like value would be substituted.

S. V. Bracy's testimony that the property was transferred for a valuable consideration[11] is not denied, al-

[8] Indicative of the value placed by the mortgagee at the time the loan was made is the condition that fire and tornado insurance of $48,000 should be carried in companies designated by the mortgagee. [It is not the intention, by referring to insurance on buildings and other improvements, to hold as a matter of law that the amount for which policies were issued represents actual or approximate values.]

[9] Oldest son of Mr. and Mrs. Bracy.

[10] The loan negotiated by S. V. Bracy in 1932 was $9,150. The personal debt was secured by shares of the common stock of United Drug Company, some of which, according to Risley's testimony, belonged to Mrs. Bracy. In "all these transactions" Risley dealt with Mr. Bracy for Mrs. Bracy.

[11] The deed from S. V. Bracy and Mrs. Kate McRae Bracy to Mrs. Mary Bracy Manning recites "One dollar in hand paid by Mary Bracy Manning, and other good and valuable considerations."

though E. J. Risley, Commercial National Bank trust officer, told of conversations with Bracy in which the latter said he did not believe he could induce Mrs. Bracy to mortgage "the lands in south Arkansas at Mt. Holly." Bracy is quoted by Risley as having stated that the lands came to his wife through her grandmother, "and she had a sentiment about it." However, in what appears to have been the same conversation, Risley says Bracy spoke of certain financial involvements as to which Mrs. Bracy was informed, ". . . so she consulted a lawyer and he suggested for her to deed this land to someone, and when everything blew over they could put it back like it was." Risley says he told Bracy [the trouble] "was all blown over, and the land should be added to the mortgage. Mr. Bracy said it could be done."[12]

Appellants argue that, while in respect of the Little Rock security there has been no foreclosure, it is known by both parties to the mortgage that should sales be decreed the property would not be sufficient to satisfy the debt, and consequently there would be a substantial deficiency judgment. We find nothing in the record indicating that appellees share this view. A fair inference to be drawn from S. V. Bracy's testimony is that $40,000 was paid for the Main street property alone; and, he added, "I would hate to take less than that for it." The holdings on Markham street were bought from two owners, one of whom was paid $6,500, and the other $7,000. Improvements were made. Mr. Bracy testified it was worth $12,000 "at least."

Pointing to the fact that appellants are secured creditors, appellees argue they are in the position of subsequent creditors, and insist the case is controlled by *Cave* v. *Zimmerman*, 198 Ark. 684, 130 S. W. 2d 717, and *Barry, Trustee* v. *Cassinelli*, 200 Ark. 627, 140 S. W. 2d 112. In those cases *Home Life & Accident Co.* v. *Schichtl*, 172 Ark. 31, 287 S. W. 769, was cited and followed.[13] Appellants agree that "While the presumption

---

[12] Shortly after this conversation occurred Alfred Bracy died.

[13] Cf. *Wilks* v. *Vaughan*, 73 Ark. 174, 83 S. W. 913; *Papan* v. *Nahay*, 106 Ark. 230, 152 S. W. 107; *Kaufman* v. *Citizens Bank*, 189 Ark. 113, 70 S. W. 2d 572; *Ramsey* v. *Broyles*, 199 Ark. 1161, 137 S. W. 2d 744.

of fraud of certain conveyances, qualifiedly fraudulent in other respects, is not applicable in favor of secured creditors, . . . the rule does not apply in the case at bar for the reason that before the conveyance was made it was agreed between the Bracys and the appellants' agent that the Union county land would be available as security also on the mortgage, and even after it was conveyed this same agreement was made."

The fallacy of this reasoning is that Mrs. Bracy, the owner, did not agree to mortgage the Union county lands. If it be urged that S. V. Bracy was agent for his wife, the answer is that, without written power of attorney, he could not bind her in the manner desired by appellants.[14]

*Robinson* v. *Bigger*, 199 Ark. 1152, 137 S. W. 2d 738, is cited by appellants. In that case there had been foreclosure; also the fraud was clearly proven. It is not analogous to the instant case.

There is insistence that the conveyance was to pay a debt barred by the statute of limitations, the shares of stock having been delivered in 1929, and the deed to Mrs. Manning not having been executed until 1934—more than three years. There was no testimony showing when the indebtedness matured. The statute of limitation would not begin to run until payment was due; nor can a third party interpose the defense for the debtors.

The charge of fraud has not been sustained. Hence, the chancellor did not err in dismissing the complaint.

Affirmed.

---

[14] A power to convey lands must possess the same requisites, and observe the same solemnities, as are necessary in a deed directly conveying the lands. *Clark et al.* v. *Graham*, (U. S.), 6 Wheat. 577; Thompson on Real Property, v. 7, §§ 3878, 3883 (Permanent Edition). See Revised Statutes, ch. 31, § 23, Pope's Digest, § 1837, for requisites of power. [See, also, act 27, approved January 31, 1939, relating to power of attorney of married women for waiver of homestead and dower.]