KAHRE *v.* McCOURTNEY.

4-6730                                    162 S. W. 2d 41

Opinion delivered May 11, 1942.

*Foster Clarke* and *Roy Penix,* for appellant.

*Bon McCourtney* and *Claude B. Brinton,* for appellee.

MEHAFFY, J. On April 25, 1934, the appellee, Bon McCourtney, sued appellant, L. H. Kahre, in the circuit court of Craighead county for $350 for professional services as a lawyer.

On March 22, 1935, the appellee filed allegations in garnishment against appellant L. H. Kahre and H. F. Schroeder, a groceryman. On March 25, 1935, L. H. Kahre filed schedule setting out his exemption, claiming in such schedule that the amount of money due from Schroeder was not subject to payment of his debts because it belonged to his wife, Mrs. Elizabeth Kahre. On April 1, 1935, L. H. Kahre executed a deed conveying lot 3, block 0 in Nesbitt's First Addition to Jonesboro, Arkansas, to his wife, Elizabeth Kahre, stating in the deed that the consideration for same was because the separate money of the wife had been used to purchase the property, and that Elizabeth Kahre was the equitable owner and entitled under the law to have the legal title to the lands in her name.

On September 3, 1935, appellant, Elizabeth M. Kahre, filed intervention in the circuit court setting up her claim to the above described real estate. On the same date Schroeder answered the garnishment denying that he was indebted to L. H. Kahre. Appellee answered the intervention and the cause was transferred to chancery court, but on September 29, 1935, the cause was transferred back to the circuit court and judgment for $150 was rendered against L. H. Kahre in favor of appellee.

On January 24, 1941, appellee brought the present suit in chancery court against appellants and against the Home Owners' Loan Corporation in which he alleged the filing of the original suit in the circuit court in April, 1935, alleged the filing of allegations and interrogatories in garnishment against Kahre and Schroeder and alleged the execution and delivery of the deed from L. H. Kahre

to Elizabeth Kahre on April 4, 1935. L. H. Kahre and his wife had executed a mortgage to the Home Owners' Loan Corporation to secure a loan of $1,786 prior to the execution and delivery of the deed by L. H. Kahre to his wife on the same land. Appellee alleged that the deed from Kahre to his wife was fraudulently given for the purpose of delaying and hindering the collection of the debt due appellee, and alleged that the property was urban property located on a corner lot 125 by 170 feet. There was a residence, a store building and a five-room bungalow on the property. He alleged that the residence was worth $2,500, that the rest of the property was worth $1,800 and prayed that the deed from L. H. Kahre to his wife be set aside, and that a lien be declared upon the property to satisfy appellee's judgment for $161.25.

Elizabeth M. Kahre filed separate answer alleging that she was the owner of the real estate; admitted that the lands were mortgaged to the Home Owners' Loan Corporation; alleged that the land described was purchased with her own separate money, no part of which belonged to her husband, and that the deed from her husband to herself was made for the purpose of making the record and the legal title to the property reflect the true ownership of appellant, which had existed for long years prior thereto and was made to do equity.

The chancellor entered a decree holding, in effect: (1) that on March 1, 1934, the Kahres executed a mortgage conveying the real estate involved to the Home Owners' Loan Corporation to secure a loan of $1,786.70; (2) that on April 25, 1934, appellee, McCourtney, sued appellant, L. H. Kahre, for legal services which resulted in a judgment for $150 on February 17, 1935; (3) that on April 4, 1935, L. H. Kahre executed and delivered a deed purporting to convey the real estate involved to his wife, Elizabeth M. Kahre; (4) that the unpaid balance due the Home Owners' Loan Corporation on April 1, 1935, was $1,783.33; (5) that the unpaid balance due the Home Owners' Loan Corporation on April 1, 1941, is $1,200.62; (6) that the mortgage to the Home Owners' Loan Corporation constitutes a first lien on the lands involved; (7) that Elizabeth M. Kahre was the equitable owner of the

lands involved as to all persons on April 4, 1935, excepting creditors of L. H. Kahre existing at that time, of which the plaintiff, McCourtney, was one; (8) that the deed executed by L. H. Kahre to Elizabeth M. Kahre was executed for the purpose of defrauding the appellee, in the collection of his debt, and should be set aside and held for naught so far as the appellee was concerned, but should remain in full force and effect as between the grantor, L. H. Kahre, and the grantee, Elizabeth M. Kahre, as to all other persons excepting the creditors of L. H. Kahre existing at the time of the execution of said deed; and (9) ordering and decreeing that the deed from L. H. Kahre on April 4, 1935, be canceled and set aside in so far as it affected the rights of appellee, but should remain in full force and effect as between L. H. Kahre, grantor, and Elizabeth M. Kahre, grantee; that in so far as the rights of appellee were concerned, the title to the lands was declared to be in the appellant, L. H. Kahre, subject to the prior lien of the Home Owners' Loan Corporation.

Appellants excepted to the findings and decree of the court and exceptions being noted and overruled, the appellants prayed an appeal to the Supreme Court which was granted. The case is here on appeal.

The evidence shows that the deed to this property had been in the husband's name for a long while; that he managed it as his own, and that he mortgaged it to the Home Owners' Loan Corporation, his wife joining in the mortgage; that before he made the deed to his wife, he had contracted this debt to the appellee. The deed to the property involved was made by Dr. Jackson on July 18, 1919, and the husband, L. H. Kahre, was the grantee.

Appellants cite and rely on 27 C. J. 433, 434. It will be observed, however, that the authority cited provides that the deed to the property cannot, in the absence of the elements of estoppel, be reached subject to the payment of his debts, and for that reason a conveyance by him to the equitable owner is not fraudlent as against his creditors.

Appellants also, in connection with the above cited authority, cite *Fairhurst* v. *Lewis*, 23 Ark. 435. In that

case the son furnished the money with a distinct understanding that the deed should be made in his name, but by mistake it was made to his father. When the son came to Little Rock and was shown the deed, he at once expressed surprise and dissatisfaction at its being made to his father. This deed was made to the father on May 15, 1855, and the son procured a deed from his father and one from the original grantee, both of which were put on record. There was no delay on the part of the son, and no elements of estoppel, nor any evidence at all indicating that the father owned the land, except that the deed was in his name, and as soon as the son learned of this, he immediately took steps to correct it.

The facts in this case are very different from the facts in the above case. In the instant case the husband not only had title to the land, but he mortgaged it as his property. In this case the husband was insolvent after deeding the property to his wife.

This court quoted with approval the following from *Wilks* v. *Vaughan,* 73 Ark. 174, 83 S. W. 913: "It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care, and when they are voluntary they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck they are presumed conclusively to be fraudulent as to existing creditors." *Gavin* v. *Scott,* 172 Ark. 234, 288 S. W. 391. Other cases cited are *McConnell* v. *Hopkins,* 86 Ark. 225, 110 S. W. 1039; *Brady* v. *Irby,* 101 Ark. 573, 142 S. W. 1124, Ann. Cas. 1913E, 1054; *Papan* v. *Nahay,* 106 Ark. 230, 152 S. W. 107; *Simon* v. *Reynolds-Davis Gro. Co.,* 108 Ark. 164, 156 S. W. 1015; *Burke* v. *New England National Bank,* 132 Ark. 268, 200 S. W. 1018; *Farmers' State Bank* v. *Foshee,* 170 Ark. 445, 280 S. W. 380.

Voluntary conveyances, however, are frequently presumed to be fraudulent, at least in the case of existing creditors and purchasers for value, regardless of the actual intent with which they are made. The cases are not harmonious as to the strength of this presumption.

Some hold that when the conveyance is shown to be voluntary, the presumption of fraud is conclusive as to existing creditors, regardless of the actual intent of the parties or the financial condition of the grantor. In short, the mere existence of debts renders the voluntary conveyance fraudulent *per se* as to those creditors, and subsequent *bona fide* purchasers. The claims of creditors rest on legal obligations, higher than the demands of affection or generosity, and a man must be just before he is generous.

There is no dispute about the appellee being an existing creditor at the time the transfer was made by Kahre to his wife.

"If the plaintiffs' debt was in existence when the transfer was made, there could not be any doubt of their right to impeach it. For every voluntary alienation of his property by an embarrassed debtor is presumptively fraudulent against existing creditors. Indebtedness raises a presumption of fraud, which becomes conclusive upon insolvency." *Driggs & Co.s' Bank* v. *Norwood,* 50 Ark. 42, 6 S. W. 323, 7 Am. St. Rep. 78; *Goodrich* v. *Bagnell Timber Co.,* 105 Ark. 90, 150 S. W. 406.

While there is some conflict in authority, this court is thoroughly committed to the doctrine that voluntary conveyances when made to members of the household and near relatives of an embarrassed debtor are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors.

Appellants contend that the transfer was not fraudulent because it was a homestead. The chancellor found that lot 3 in block 0 above referred to contains over one-quarter of an acre in area and has a value in excess of $2,500 and is urban property.

The finding of the chancellor on all questions of fact is supported by a preponderance of the evidence.

The decree is affirmed.